Aaron M. Zigler (Cal. Bar No. 327318)
aaron@ziglerlawgroup.com
Kevin M. McCormack (*pro hac vice* to be filed)
kevin@ziglerlawgroup.com
Nidya S. Gutierrez (Cal. Bar No. 330209)
nidya@ziglerlawgroup.com
**ZIGLER LAW GROUP, LLC**
308 S. Jefferson Street | Suite 333
Chicago, IL 60661
Telephone: 312-535-5995

*Counsel for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA JOHNSON, SHANNON ROSE, SCOTT MCMANNES, BRIAN TROESCH, MARGIE RAMOS-TORO, MICHELLE DORRY, MELISSA PEACE, DORIE LELAND, MONICA HATCH, STEVEN NEFF, CHERYL GEBO, SANDEEP TRISAL, GREGORY BASSELL, SARA BULLARD, and WILLIAM KOPATICH, individually and on behalf of the public and all others similarly situated, | Case No.: 2:26-cv-9101 **PLAINTIFFS' CLASS ACTION COMPLAINT** |
| Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| vs. | |
| THE TRADE DESK, INC., a Delaware corporation | |
| Defendant. | |

PLAINTIFFS' CLASS ACTION COMPLAINT

## I.   NATURE OF THE ACTION

This is a class action arising from Defendant's systematic interception, use, and disclosure of U.S. taxpayers' most sensitive financial information—their Tax Return Information ("TRI")—without taxpayers' knowledge or consent.

Every year, tens of millions of Americans turn to online tax preparation platforms to prepare and file their federal and state income tax returns. When they do, they disclose the full financial picture of their lives—information the federal government has protected by criminal statute for over 50 years.

The law is designed to put taxpayers, not for-profit companies, in charge of how TRI is used and disclosed. If companies like Defendant want to obtain, use, or disclose TRI for any purpose that goes beyond what is specifically allowed by law, then they must first obtain a taxpayer's written, signed, specific consent—consent that identifies each recipient of TRI by name and that describes each purpose for any use or disclosure. No general privacy policy, clickwrap, browsewrap, or buried terms-of-service checkbox satisfies that requirement.

Defendant is a demand-side digital marketing and analytics company whose software is deployed on the websites, apps, and servers of major tax preparation companies, including H&R Block and Intuit TurboTax. Defendant's devices installed on such systems are The Trade Desk Universal Pixel, The Trade Desk Static Tracking Tag, The Trade Desk Conversion Application Programming Interface ("CAPI"), Unified ID (UID) Public Operator Service and token, The Trade Desk Software Developer Kit ("SDK"), and related computer code and systems with similar functions (collectively, "The Trade Desk tracking tools"). The Trade Desk tracking tools are used by Defendant to secretly record and transmit taxpayers' activities, purchases, video and TV views, ad views, and other electronic communications, including TRI, to Defendant in real time.

1

The TRI transferred includes taxpayer identifying information, including unique identifiers, spouse's unique identifiers, tax filing year, tax forms used, filing status, whether the return was prepared online or in a retail location, prior year tax filing information, anticipated lifetime value to a tax preparer, and more. That data streams to Defendant's servers at the moment of entry. When Defendant receives this information, it matches the information with identifiers from Defendant's extensive database of personally identifiable information ("PII") to identify the individual taxpayer and add the intercepted TRI to the other data Defendant has collected to create a dossier on the taxpayer. The dossier is used for Defendant's own business purposes, including: for use in advertising to high lifetime value taxpayers, for excluding low lifetime value taxpayers or those who had already filed in the current tax year, for use in artificial intelligence or machine learning ("AI/ML") algorithms, and in services provided for money to Defendant's advertising clients.

The Trade Desk encouraged tax preparers to send TRI to The Trade Desk to improve advertising results, and worked directly with tax preparation companies to install computer code on the taxpayers' computers or mobile devices and on tax preparers' computer systems to avoid anti-tracking measures used by taxpayers' browsers. The Trade Desk built and implemented computer systems to identify particular taxpayers based on their TRI and information previously known by The Trade Desk.

None of this was disclosed to Plaintiffs or the millions of taxpayers who used these platforms. None of it was consented to. The Treasury Inspector General for Tax Administration ("TIGTA")—the federal agency responsible for oversight of tax administration—investigated the consent practices of the tax preparation companies whose platforms Defendant's tools were installed on, and found that the companies' consent disclosures did not comply with federal law.

Plaintiffs bring this action individually and on behalf of a nationwide class and state-specific classes whose TRI was intercepted by Defendant without lawful consent. Plaintiffs and Class Members seek statutory damages, actual damages, punitive damages, injunctive relief, and attorney's fees under the Electronic Communications Privacy Act, and applicable state laws.

## II.   PARTIES, JURISDICTION, AND VENUE

### A.   Plaintiffs

1.    Plaintiff Sheila Johnson is a natural person and is a citizen and resident of American Canyon, California.

2.    Plaintiff Shannon Rose is a natural person and is a citizen and resident of Riverbank, California.

3.    Plaintiff Scott McMannes is a natural person and is a citizen and resident of St. Augustine, Florida.

4.    Plaintiff Brian Troesch is a natural person and is a citizen and resident of Chicago, Illinois.

5.    Plaintiff Margie Ramos-Toro is a natural person and is a citizen and resident of Chicago, Illinois.

6.    Plaintiff Michelle Dorry is a natural person and is a citizen and resident of Easton, Maryland.

7.    Plaintiff Melissa Peace is a natural person and is a citizen and resident of Hyannis, Massachusetts.

8.    Plaintiff Dorie Leland is a natural person and is a citizen and resident of Onaway, Michigan.

9.    Plaintiff Monica Hatch is a natural person and is a citizen and resident of Wadena, Minnesota.

10. Plaintiff Steven Neff is a natural person and is a citizen and resident of Concord, New Hampshire.

11. Plaintiff Cheryl Gebo is a natural person and is a citizen and resident of Salem, New Hampshire.

12. Plaintiff Sandeep Trisal is a natural person and is a citizen and resident of New York, New York.

13. Plaintiff Gregory Bassell is a natural person and is a citizen and resident of Haverstraw, New York.

14. Plaintiff Sara Bullard is a natural person and is a citizen and resident of Coal Township, Pennsylvania.

15. Plaintiff William Kopatich is a natural person and is a citizen and resident of Kirkland, Washington.

**B. Defendant**

16. Defendant The Trade Desk, Inc. is a Delaware corporation with principal executive offices located at 42 N. Chestnut Street, Ventura, CA 93001. The Trade Desk claims to be the world's largest independent demand-side advertising platform.

**C. Jurisdiction**

17. This Court has general personal jurisdiction over Defendant.

18. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District. Defendant maintains its principal place of business in Ventura, California, within Ventura County, which lies within the Central District of California.

19. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act of 2005). The named Plaintiffs are citizens of California, Florida, Illinois, Maryland, Massachusetts, Michigan, Minnesota, New Hampshire, New York, Pennsylvania, and Washington. Defendant

is incorporated in Delaware and maintains its principal place of business in California. Accordingly, at least one member of the putative class is a citizen of a state different from at least one Defendant, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, satisfying the minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A).

20. This Court independently has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States. Plaintiffs assert claims under the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, which prohibits the unlawful interception, use, and disclosure of electronic communications.

21. This Court has supplemental jurisdiction over the state-law claims asserted in this action pursuant to 28 U.S.C. § 1367(a). The state-law claims—including claims for violations of electronic surveillance, tax-preparer regulation, and/or consumer protection statutes from California, Florida, Illinois, Maryland, Massachusetts, Michigan, Minnesota, New Hampshire, New York, Pennsylvania, and Washington—arise from the same nucleus of operative fact as the federal claims: Defendant's unauthorized interception, use, and disclosure of Plaintiffs' and putative Class Members' electronic communications and tax return information through software deployed on tax preparers' computer systems. The state and federal claims are so related that they form part of the same case or controversy under Article III of the United States Constitution, and resolution of both sets of claims will involve common questions of law and fact concerning Defendant's software, its data-interception practices, and the content of the communications and TRI unlawfully captured.

22. Defendant maintains its principal place of business in Ventura, California, and California is accordingly the state from which Defendant directs and

controls business operations, including the data-interception and analytics business at issue.

23. On information and belief, the commercial decisions underlying Defendant's deployment of session-replay and data-interception software on tax preparation platforms, and the use of the TRI, were made by personnel operating from Defendant's California headquarters.

24. On information and belief, the interceptions of TRI were initiated from Defendant's servers in California, the data was transmitted to Defendant's computer systems in California for analysis, compilation, and identity matching, and the data was used in California.

**III.    COMMON FACTUAL ALLEGATIONS**

**A.    The Tax Preparation Industry and Third-Party Tracking**

25. Unlike many other countries that offer free government-provided electronic tax return filing services, the United States does not offer a free government-provided tax filing service for taxpayers.

26. The IRS does not provide taxpayers a way to directly file their taxes electronically.

27. In the absence of a free, government-provided tax filing system, taxpayers who wish to file electronically must choose a private company to process their TRI.

28. In the United States, millions of taxpayers prepare and file their annual tax returns by using websites and software applications developed and hosted by private, for-profit tax preparation companies, including but not limited to H&R Block, TaxSlayer, and Intuit's TurboTax.

29. Some tax preparation companies have agreed to provide free tax filing services to taxpayers who fit certain criteria, but the tax preparation companies offer

these free services on the same websites on which they offer services that require taxpayers to pay fees for services.

30. Tax preparation companies rely on advertising and marketing to convince taxpayers to use the for-profit tax filing options.

31. The TRI that taxpayers provide to tax preparation companies is valuable for commercial purposes, including for advertising and marketing purposes.

32. For example, taxpayers commonly provide information about income, employment status, family composition, investment activity, and financial complexity, among other private aspects of the taxpayer's life—all of which is commercially valuable information.

33. Plaintiffs and Class Members who used the paid tiers of these platforms paid fees to the tax preparation companies for tax preparation and filing services.

34. To exploit the commercial value of TRI, tax preparation companies engage third-party vendors—including Defendant—to deploy tracking software on their websites and software applications.

35. When a taxpayer uses an online tax preparation platform, that taxpayer does not interact solely with the tax preparer's systems. In the background, the tax preparer's website or software application simultaneously transmits information about the taxpayer's activities to the servers of third-party technology vendors whose software or code has been embedded in the tax preparer's website or software application.

36. As described in detail below, these tax preparation companies and Defendant use sophisticated technological means—including software that operates invisibly in the background of tax preparation apps and websites, and server-to-server transmissions invisible to users—to intercept, use, and disclose TRI for business purposes.

7

37. Further, these tax preparation companies and Defendant use generic privacy policies and embedded terms of service rather than the standalone, signed, specific consent forms that federal law requires.

## B.    The Strict Legal Protections for TRI

38. Tax Return Information ("TRI") "means any information, including, but not limited to, a taxpayer's name, address, or identifying number, which is furnished in any form or manner for, or in connection with, the preparation of a tax return of the taxpayer." 26 C.F.R. § 301.7216-1.

39. TRI "includes information that the taxpayer furnishes to a tax return preparer and information furnished to the tax return preparer by a third party." *Id.*

40. TRI includes information derived from TRI and statistical compilations of TRI, even in forms that cannot be associated with any particular taxpayer. 26 C.F.R. § 301.7216-1(b)(3)(i)(A), (B).

41. Data analytics products, behavioral profiles, and artificial intelligence models built from TRI are themselves TRI. 26 C.F.R. § 301.7216-1(b)(3)(i)(A), (B).

42. Knowingly or recklessly disclosing TRI to any person for any purpose other than to prepare or assist in preparing a tax return is a federal crime. 26 U.S.C. § 7216(a)(1).

43. "Disclosure" of tax return information is "the act of making tax return information known to any person in any manner whatever." *See* 26 C.F.R. § 301.7216-1(b)(5).

44. Using TRI for any purpose other than preparing or assisting in preparing a tax return and filing it is a federal crime. 26 U.S.C. § 7216(a)(2).

45. "Use" of tax return information is "any circumstance in which a tax return preparer refers to, or relies upon, tax return information as the basis to take or permit an action." *See* 26 C.F.R. § 301.7216-1(b)(4)(i).

8

46. Knowingly or negligently inspecting or disclosing TRI is unlawful. 26 U.S.C. § 7431.

47. Congress expressly delegated to the Secretary of the Treasury authority to regulate the disclosure and use of TRI. 26 U.S.C. § 7216(b)(3).

48. The Secretary exercised that authority through 26 C.F.R. 301.7216-1 et seq., which sets out the requirements for the use or disclosure of TRI, including the consent required for disclosure or use of TRI.

49. Any consent for use or disclosure of tax return information must: (a) include the name of the tax return preparer and the name of the taxpayer; (b) identify the purpose of the disclosure and the intended recipients; (c) describe the particular use authorized; (d) specify the tax return information to be disclosed; (e) be signed and dated by the taxpayer; and (f) specify a duration of time when it is valid, but if no duration is specified, the consent is limited to one year from the date of signing. 26 C.F.R. § 301.7216-3(a)(3)(i)(A)-(E); (b)(5).

50. A purported consent that omits any required element—including identification of the specific recipient or the intended purpose—is legally void and confers no authority to disclose or use TRI.

51. A legally valid consent cannot combine a consent for use and a consent for disclosure within the same document. 26 C.F.R. § 301.7216-3(c)(1).

52. Instead, consent for use and consent for disclosure must be made in separate documents. *Id.*

53. A consent for use and disclosure of an entire return must include an option for the taxpayer to request a more minimal disclosure or use. 26 C.F.R. § 301.7216-3(c)(2).

54. A consent embedded in a terms of service, privacy policy, cookie banner, or login flow is legally insufficient to satisfy 26 C.F.R. § 301.7216-3.

55. These restrictions on the use and disclosure of TRI, as well as the requirements for obtaining consent to any further use or disclosure of TRI, apply to "tax return preparers," which includes every person "providing services in connection with the preparation of tax returns." 26 U.S.C. § 7216(a).

56. Defendant provided services in connection with the preparation of tax returns.

57. Defendant was not authorized to use or disclose TRI of Plaintiffs and absent Class Members.

**C.    Investigative Findings: A Pervasive Lack of Lawful Consent in the Tax Preparation Industry**

58. The Treasury Inspector General for Tax Administration ("TIGTA") is the independent federal oversight body within the Department of the Treasury responsible for auditing and investigating the IRS's administration of the tax laws, including compliance with the protections afforded to taxpayers under 26 U.S.C. § 7216 and its implementing regulations.

59. TIGTA conducted an audit examining online tax preparation providers Intuit Turbotax, H&R Block, TaxSlayer, and TaxAct and the consents they obtain from taxpayers. TIGTA issued its findings in TIGTA Report Number 2024-400-062, titled *The Information Collected by Online Providers and Shared With Third Parties Is Not Clearly Disclosed to Taxpayers and Is Unknown to the IRS* (Sept. 2024) (the "TIGTA Report").

60. TIGTA determined that "when a taxpayer uses an online provider's website to complete their tax return, all information that is collected during the process, which includes information necessary for completing the tax returns, occurs at the online provider's website. The information collected is protected under I.R.C. §7216 because it is furnished for the preparation of the tax return."

10

61.    TIGTA found that companies' consent statements "did not comply with the requirements of Treasury Regulation § 301.7216." Specifically, the consent statements "did not clearly identify the intended purpose of the disclosure or the specific recipient(s) of the tax return information."

62.    TIGTA further found that the consent-related documents were "scattered throughout" the consent process, making it "difficult to understand the taxpayer consent statement fully and accurately."

63.    Treasury Regulation § 301.7216-3(c)(1) requires that consent for use and consent for disclosure be presented in separate standalone documents. The tax preparation companies' practice of distributing consent-related language across privacy policies, user agreements, and consent statements in a fragmented fashion violated that requirement.

64.    TIGTA further stated: "[W]e shared our assessment of the taxpayer consent statements with the IRS on June 5, 2024 and the IRS confirmed that these statements do not fully comply with the requirements of [federal law]."

65.    TIGTA further found that "the IRS does not have awareness of the full scope of information that an online provider routinely collects. . . or shared with third parties."

**D.    Who Defendant Is and What They Sell**

66.    Defendant is a demand-side digital marketing and analytics company that provides advertising services and analytics products to large commercial clients, including tax preparation companies.

67.    Defendant offers companies tools to track and analyze customer and potential customer behavior on the companies' websites, across the internet as a whole, and across other channels such as telephone calls, customer reviews, and physical visits to retail establishments.

68. Defendant offers companies the ability to combine the data the companies have tracked with the massive datasets of personally identifiable information collected by The Trade Desk from its extensive media ecosystem and its network of customers who have also installed The Trade Desk tracking tools.

69. Data sets collected by companies like Defendant have significant economic value.

70. Artificial intelligence ("AI") and machine learning ("ML") algorithms are "data hungry," meaning they require large datasets for the AI/ML algorithms to detect patterns and generate useful conclusions about human behavior.

71. Data collected by Defendant are used in Defendant's AI/ML systems, to train, refine, and optimize advertising targeting.

72. As a result of the usefulness across business enterprises, data collected by Defendant is not held in a single place.

73. Data collected by Defendant is frequently used across the organization and by third parties provided access to such information by Defendant.

74. As of 2019, The Trade Desk's advertising service reached an audience of more than 819 million devices per day.

75. By 2025, The Trade Desk claims its advertising service saw as many as 15 million advertising opportunities per second.

76. The Trade Desk offers advertisers access to over 120 million connected "smart" TVs, reaching 90 million households.

77. Access to The Trade Desk's advertising platform is valuable to companies.

78. The Trade Desk offers companies with large advertising budgets technical support to help those companies achieve advertising goals by, among other things, targeting advertisements to customers most likely to purchase the advertised products.

79. The Trade Desk's technical support to advertise on its platform is valuable to companies.

80. The Trade Desk uses the massive data captured by its platform to build predictive models around user characteristics, such as demographic, purchase intent or interest data.

81. Data from The Trade Desk's platform is continually fed back into these models, which enables them to improve targeting and prediction over time as more data is collected.

**E.    How Defendant's Software Operates: Real-Time Capture, Continuous Transmission, and Unified Identity Tracking**

82. Defendant offers or has offered The Trade Desk Tracking Tools to companies who want to advertise on the The Trade Desk platform.

83. The Trade Desk's Universal Pixel is a small, 1-pixel-by-1-pixel image that a website operator can add to their website to help track the actions users take on every page of the website and across multiple sites.

84. The Trade Desk Universal Pixel is installed in the background on a website user's computer when the user first visits a webpage, without any action by or consent from the user.

85. The Trade Desk Universal Pixel then begins transmitting information to Defendant, including information about the user's device, IP address, unique identifiers, The Trade Desk Unified ID, and other personally identifiable information.

86. The Trade Desk Universal Pixel is used to track the user's actions on the website, such as the pages the user visits, which buttons they click, which videos or other media they view, and what information they enter into forms, sending records of the user's activities to The Trade Desk.

87. The Trade Desk Universal Pixel is "persistent" software, meaning it remains on a computer system once installed even when a user is not actively visiting a tracked website, allowing the same pixel to track a user's activities across other websites in the The Trade Desk ecosystem and other websites that have The Trade Desk tracking tools enabled, which includes many of the most popular and frequently visited websites in the world.

88. The Trade Desk also uses a Unified ID (UID) based on a user's identifiable information, such as email or phone number, to track visitors to a tax preparer.

89. The Trade Desk UID tracks the user's activities not just on the tax preparer's website, but also on other websites and devices, attempting to unify all of a user's activity under a single identifier.

90. The Trade Desk uses a Unified ID Token to allow advertisers, advertising platforms, website operators, mobile and desktop app creators, and others including tax preparers to link activity to a particular identifiable user.

91. The Trade Desk's Conversion Application Programming Interface ("CAPI") is computer code that creates a connection between tax preparers' computer systems and The Trade Desk's servers.

92. Once installed on the tax preparers' computer systems, CAPI sends similar TRI and event data to that described above for the The Trade Desk Universal Pixel.

93. Instead of sending The Trade Desk the data as it is sent from the user's browser to the tax preparer, CAPI sends the tracked data in real time as it is being received by the tax preparers' computer systems.

94. CAPI does not just track online activities; The Trade Desk also uses CAPI to track offline activities.

95.    Defendant offers tax return preparers an additional tool called "offline conversions API" which can be installed on the tax return preparers' computer systems including their customer relationship management ("CRM") database.

96.    As the name suggests, the Offline Conversions API tracks users' activities offline, including information transmitted during visits by taxpayers to tax preparers' brick-and-mortar retail locations in order to prepare their taxes.

97.    The Offline Conversions API collects customer data including TRI as it is being received by the tax preparers' servers and transmits that data to The Trade Desk.

98.    The Trade Desk requires tax preparers and other advertisers to send PII to The Trade Desk in a "hashed" format.

99.    "Hashing" involves running an algorithm on the PII to create an obscured identifier which conceals the PII.

100.    Hashed identifiers are pseudonymous, meaning they are not truly anonymous but can be "unhashed" and matched to a particular user.

101.    The hashing used by The Trade Desk is a one-way cryptographic hash function with a consistent output, meaning that the same input always produces the same hash value.

102.    The hashing algorithm used by CAPI is public, and anyone can generate the same hash given the same input.

103.    The hashing algorithm used by CAPI is deterministic, meaning that customer inputs are standardized so that the hashed data can be matched consistently to unhashed identifiers known by The Trade Desk.

104.    The hashing algorithm is used by advertisers throughout the Trade Desk's ad and tracking network, so the same hashed identifiers function as a cross-site identifier for multiple websites and applications.

105.   After receiving the hashed identifiers, The Trade Desk is able to match those hashed identifiers to particular PII already in The Trade Desk's possession as a result of its extensive operations and data tracking performed throughout the world.

106.   The Trade Desk's extensive advertising system depends on consistent identifier matching and the ability to link activities sent under hashed identifiers to particular users within The Trade Desk's ad network, regardless of the source of the data.

107.   The Trade Desk uses an Identity Resolution Service called Identity Alliance to match data received from its tracking tools to user information in its possession, and has refined and improved its processes and code to increase the overall match rate and identify a larger percentage of user activity being intercepted by its tracking tools.

108.   Identity Alliance is computer code that links multiple identifiers to a single unified profile representing a particular user.

109.   When a tax preparer first sends user information to The Trade Desk, Identity Alliance associates all known devices and IDs for that user to the new information, enabling The Trade Desk to reach the same individual across their phone, laptop, tablet, and connected TV based on the new information received.

110.   Identity Alliance, as used by The Trade Desk for tax preparers, collects TRI and event data from tax preparers and links it to an identity known to The Trade Desk to allow cross device targeting.

111.   Identity Alliance and the Unified ID provide pseudonymous identifiers for records, concealing what PII is being sent to The Trade Desk from tax preparers.

112.   Identity Alliance and the Unified ID are newer technologies which The Trade Desk began using to preserve the ability to track identified individuals across the internet without relying on browser cookies.

113. After a Unified ID is assigned to a user, that user's activities and specifically TRI from the website, app, and/or offline tax preparation location are transmitted to The Trade Desk along with the Unified ID using the Universal Pixel, CAPI, an SDK and/or other software installed on the tax preparers' computer systems.

114. After receiving TRI with an assigned Unified ID, The Trade Desk processes those results with Identity Alliance, which performs an ID lookup to connect the Unified ID to other identifying information previously collected by The Trade Desk, linking the Unified ID to a particular person and to the extensive dossier The Trade Desk keeps of user activity.

115. The Trade Desk uses Identity Alliance, Unified IDs and CAPI to track users server-side, in part because privacy settings in web browsers have begun blocking pixels and tracking tags, and because tracking using pixels and tracking tags has resulted in significant legal liability for entities tracking legally protected, sensitive information.

116. The Trade Desk's tracking is extensive, involving 300 million people with Unified IDs across 3.1 billion devices.

117. The Trade Desk has received and continues to receive TRI from tens of millions of taxpayers.

118. The Trade Desk's tracking occurs both before and after the taxpayer has logged in to enter their tax information, with The Trade Desk tracking both the pre-login and post-login activities and combining that information in The Trade Desk's electronic dossiers.

119. The Trade Desk also uses CAPI for server-to-server connections with tax preparers' customer relationship management (CRM) systems, sending information about new and existing customers to The Trade Desk as those records are received from both online and offline transactions.

120. Defendant does not seek a user's consent or permission before tracking their TRI.

121. Instead, Defendant's software runs surreptitiously in the background, meaning most users are unaware that Defendant's software is running and is tracking their TRI.

122. Defendant has programmed their software to send intercepted information to its own servers using encrypted communications.

123. Taxpayers provided TRI for the purpose of preparing their returns; they did not expect that a third-party analytics vendor would simultaneously receive and record that information.

124. The TRI that Defendant captured included information that taxpayers furnished to prepare tax returns that were subsequently filed with the Internal Revenue Service and applicable state tax authorities.

125. When Defendant's tracking software captures data about a person's activities, that data is transferred to Defendant's servers within fractions of a second of its capture.

126. TIGTA has confirmed that the use of pixel and session-recording technology to transmit TRI to third parties constitutes a disclosure of TRI subject to § 7216's requirements.

**F.    Defendant's Commercial Use and Disclosure of TRI**

127. Defendant uses TRI it collects for purposes other than preparing tax returns.

128. Defendant's software is installed on a large number of popular websites, allowing Defendant to track users across multiple websites without the users knowing that they have been tracked.

129. Defendant's Unified ID and Identity Alliance tracks users across different devices. For example, if a user connects to a website where Defendant's

code is installed on a laptop and later on their phone or mobile device, Defendant's code will identify both devices and will track activities on both, linking them together to identify the user and create a consolidated profile of that user's activities and data.

130. Defendant has relationships with major retailers, linking the collected data to in-store purchases when a user's information is included in transactions through loyalty programs, retail discount cards, and customer databases.

131. Defendant's software tracks online data points including individual mouse clicks, pages viewed, browsing history, user identity including first and last name, email addresses, IP addresses, persistent device identifiers, offline purchase data, connected and online TV viewership records, ad views, phone numbers, and physical addresses, among other things.

132. Defendant integrates the information collected by their software with other data sources, including: data collected and purchased by data brokers, publicly available information, users' interactions with The Trade Desk services, user's video viewing history, and in-store purchases to develop robust profiles of the users it tracks on customers' websites.

133. The Trade Desk advertises to clients, including its tax preparation clients, that it receives trillions of shopping, streaming, ad view, and browsing signals, which it can combine with first-party data to create unrivaled insights into the clients' desired advertising audiences.

134. Defendant uses the TRI to improve advertising, marketing, and website analytics on behalf of its customers.

135. Defendant uses the TRI to exclude potential customers from advertising who were evaluated to have lower lifetime value or to have already filed their taxes.

136. Defendant uses TRI by, among other things, running artificial intelligence or machine learning ("AI/ML") programs to refine advertising campaigns, ad targeting, and customer identification.

137. Defendant's AI/ML programs use data from across tax preparers' organizations and The Trade Desk's extensive data tracking ecosystem, including: ad views, ad clicks, purchases, emails, physical location visits, video viewership, ad delivery and engagement, and tax filing history.

**G.    Defendant's Knowledge, Intent, and Affirmative Choice to Record**

138. Defendant contracted with H&R Block to provide tracking and analytics services for deployment on H&R Block's systems.

139. During the period relevant to this lawsuit, Defendant has deployed their tracking and analytics software on H&R Block's online tax preparation platform, apps, and/or servers.

140. Deployment of Defendant's tracking and analytics software on H&R Block's systems was a deliberate decision that involved active coordination between H&R Block and Defendant.

141. Defendant contracted with Intuit to provide tracking and analytics services for deployment on Intuit's systems, including TurboTax.

142. During the period relevant to this lawsuit, Defendant has deployed their tracking and analytics software on Intuit's online tax preparation platform, apps, and/or servers.

143. Deployment of Defendant's tracking and analytics software on Intuit's systems was a deliberate decision that involved active coordination between Intuit and Defendant.

144. Deployment of Defendant's tracking and analytics software on all such tax preparation systems was a deliberate decision that involved active coordination between those tax preparation companies and Defendant.

145. At all relevant times, Defendant was aware that H&R Block and Intuit were used by taxpayers to enter TRI and transmit it to the IRS.

146. Defendant's employees and/or other agents worked directly with Defendant's tax preparation company clients to deploy and configure Defendant's tracking software.

147. This deployment and configuration work was performed by Defendant's employees and/or other agents with knowledge that the systems in question were used by taxpayers to enter TRI and transmit it to the IRS.

148. The collection of TRI from taxpayers was not an inadvertent consequence of Defendant's software; rather, this collection of TRI was the foreseeable and intended result of deploying tracking software on computer systems where users prepare tax returns.

149. Defendant was aware, from their employees' and agents' direct participation in deploying and configuring their software on their tax preparation company clients' systems, that the software was capturing TRI.

**H.     Defendant Did Not Obtain Lawful Consent**

150. Neither Defendant nor their tax preparation clients whose systems Defendant served obtained from Plaintiffs or Class Members a consent to the disclosure or use of their TRI satisfying 26 C.F.R. § 301.7216-3.

151. Defendant was not a party to the communications between taxpayers and the tax preparation platforms.

152. Instead, Defendant separately received the contents of those communications on Defendant's own or designated servers, retained them, analyzed them, and used and disclosed them for Defendant's own independent commercial

purposes, including behavioral analytics, audience construction, model training, product improvement, and other monetization.

153. No legally valid consent document identifying Defendant by name as a recipient of TRI was presented to Plaintiffs or Class Members.

154. Defendant was not identified by name in any compliant consent document presented to Plaintiffs or Class Members because the consent statements presented to them did not include that information at all, consistent with TIGTA's finding that consent statements did not identify the specific recipients of taxpayers' tax return information.

155. No legally valid consent document describing the specific commercial purposes for which Defendant would use TRI—including but not limited to advertising analytics, AI/ML model training, or advertising audience development—was presented to Plaintiffs or Class Members.

156. No compliant consent document presented to Plaintiffs or Class Members described advertising analytics, advertising audience development, AI/ML model training, or any of the other commercial purposes for which Defendant received and used TRI, because the consent statements presented to them did not include that information, consistent with TIGTA's finding that the audited providers' consent statements did not identify the intended purpose of the disclosure or the specific recipients of taxpayers' tax return information.

157. No legally valid consent document was presented to Plaintiffs or Class Members to allow them to request a more minimal disclosure or use of their TRI than how Defendant disclosed and used that TRI.

158. Upon information and belief, Defendant's agreements with their tax preparation company clients authorized Defendant to use data collected from those clients' platforms for Defendant's own commercial purposes, including advertising

analytics, AI/ML model development, product improvement, and construction of behavioral profiles for use across Defendant's client base.

## IV.    INDIVIDUAL FACTUAL ALLEGATIONS

159.    Each Plaintiff named below used one or more of the following tax-preparation services to prepare a tax return: Intuit TurboTax, H&R Block, or TaxSlayer, during the years specified for that Plaintiff. During the period of each Plaintiff's use, Defendant's tracking software was deployed and active on the relevant platform's or platforms' website, servers, and apps, as alleged in Section III. By its design and operation, as alleged in Sections III(E) and III(G), that software captured TRI and transmitted the captured data in real time to Defendant's or Defendant's-designated servers. Defendant captured TRI without any consent satisfying 26 C.F.R. § 301.7216-3; as alleged in Sections III(C) and III(H), the consent statements presented to Plaintiffs did not identify Defendant or describe Defendant's commercial purposes. None of the Plaintiffs named below knew that Defendant was intercepting TRI, authorized Defendant to receive TRI, or executed any separate written consent identifying Defendant by name, the specific TRI to be disclosed, and Defendant's specific uses of that information. Had Defendant's interception and use of TRI been disclosed, each Plaintiff would not have used the relevant platform(s) in the same manner, would have sought a different provider, or would have declined to transmit the information until lawful safeguards were in place.

### A.    Sheila Johnson

160.    Plaintiff Sheila Johnson used Intuit TurboTax from California in the years of 2020 through 2025 to prepare a tax return. Sheila Johnson incorporates by reference the allegations in ¶159 above.

161. Sheila Johnson intends to use similar tax-preparation services again and, absent injunctive relief, faces a real and immediate risk that Defendant's software will again intercept TRI.

**B.      Shannon Rose**

162. Plaintiff Shannon Rose used H&R Block from California in the years of 2020 through 2025 to prepare a tax return. Shannon Rose incorporates by reference the allegations in ¶159 above.

163. Shannon Rose intends to use similar tax-preparation services again and, absent injunctive relief, faces a real and immediate risk that Defendant's software will again intercept TRI.

**C.      Scott McMannes**

164. Plaintiff Scott McMannes used H&R Block from Florida in the years of 2020 and Intuit TurboTax from Florida in the years of 2021 through 2025 to prepare a tax return. Scott McMannes incorporates by reference the allegations in ¶159 above as to each platform used.

165. Scott McMannes intends to use similar tax-preparation services again and, absent injunctive relief, faces a real and immediate risk that Defendant's software will again intercept TRI.

**D.      Brian Troesch**

166. Plaintiff Brian Troesch used Intuit TurboTax from Illinois in the years of 2020 through 2025 to prepare a tax return. Brian Troesch incorporates by reference the allegations in ¶159 above.

167. Brian Troesch intends to use similar tax-preparation services again and, absent injunctive relief, faces a real and immediate risk that Defendant's software will again intercept TRI.

### E.    Margie Ramos-Toro

168.    Plaintiff Margie Ramos-Toro used H&R Block from Illinois in the years of 2021, 2024, and 2025 to prepare a tax return. Margie Ramos-Toro incorporates by reference the allegations in ¶159 above.

169.    Margie Ramos-Toro intends to use similar tax-preparation services again and, absent injunctive relief, faces a real and immediate risk that Defendant's software will again intercept TRI.

### F.    Michelle Dorry

170.    Plaintiff Michelle Dorry used Intuit TurboTax from Maryland in the years of 2020 through 2025 to prepare a tax return. Michelle Dorry incorporates by reference the allegations in ¶159 above.

171.    Michelle Dorry intends to use similar tax-preparation services again and, absent injunctive relief, faces a real and immediate risk that Defendant's software will again intercept TRI.

### G.    Melissa Peace

172.    Plaintiff Melissa Peace used H&R Block from Massachusetts in the years of 2020 and 2022 and Intuit TurboTax from Massachusetts in the years of 2021 and 2023 through 2025 to prepare a tax return. Melissa Peace incorporates by reference the allegations in ¶159 above as to each platform used.

173.    Melissa Peace intends to use similar tax-preparation services again and, absent injunctive relief, faces a real and immediate risk that Defendant's software will again intercept TRI.

### H.    Dorie Leland

174.    Plaintiff Dorie Leland used H&R Block from Michigan in the years of 2020 and Intuit TurboTax from Michigan in the years of 2021 through 2025 to prepare a tax return. Dorie Leland incorporates by reference the allegations in ¶159 above as to each platform used.

175. Dorie Leland intends to use similar tax-preparation services again and, absent injunctive relief, faces a real and immediate risk that Defendant's software will again intercept TRI.

**I.    Monica Hatch**

176. Plaintiff Monica Hatch used Intuit TurboTax from Minnesota in the years of 2020 through 2025 to prepare a tax return. Monica Hatch incorporates by reference the allegations in ¶159 above.

177. Monica Hatch intends to use similar tax-preparation services again and, absent injunctive relief, faces a real and immediate risk that Defendant's software will again intercept TRI.

**J.    Cheryl Gebo**

178. Plaintiff Cheryl Gebo used H&R Block from New Hampshire in the years of 2020 through 2024 and Intuit TurboTax from New Hampshire in the years of 2025 to prepare a tax return. Cheryl Gebo incorporates by reference the allegations in ¶159 above as to each platform used.

179. Cheryl Gebo intends to use similar tax-preparation services again and, absent injunctive relief, faces a real and immediate risk that Defendant's software will again intercept TRI.

**K.    Steven Neff**

180. Plaintiff Steven Neff used Intuit TurboTax from New Hampshire in the years of 2020 through 2025 to prepare a tax return. Steven Neff incorporates by reference the allegations in ¶159 above.

181. Steven Neff intends to use similar tax-preparation services again and, absent injunctive relief, faces a real and immediate risk that Defendant's software will again intercept TRI.

**L.    Gregory Bassell**

182.   Plaintiff Gregory Bassell used Intuit TurboTax from New York in the years of 2020 through 2024 and H&R Block from New York in the years of 2025 to prepare a tax return. Gregory Bassell incorporates by reference the allegations in ¶159 above as to each platform used.

183.   Gregory Bassell intends to use similar tax-preparation services again and, absent injunctive relief, faces a real and immediate risk that Defendant's software will again intercept TRI.

**M.    Sandeep Trisal**

184.   Plaintiff Sandeep Trisal used TaxSlayer from New York in the years of 2020 through 2022 to prepare a tax return. Sandeep Trisal incorporates by reference the allegations in ¶159 above.

185.   Sandeep Trisal intends to use similar tax-preparation services again and, absent injunctive relief, faces a real and immediate risk that Defendant's software will again intercept TRI.

**N.    Sara Bullard**

186.   Plaintiff Sara Bullard used Intuit TurboTax from Pennsylvania in the years of 2020 through 2025 to prepare a tax return. Sara Bullard incorporates by reference the allegations in ¶159 above.

187.   Sara Bullard intends to use similar tax-preparation services again and, absent injunctive relief, faces a real and immediate risk that Defendant's software will again intercept TRI.

**O.    William Kopatich**

188.   Plaintiff William Kopatich used Intuit TurboTax from Washington in the years of 2020 through 2025 to prepare a tax return. William Kopatich incorporates by reference the allegations in ¶159 above.

189. William Kopatich intends to use similar tax-preparation services again and, absent injunctive relief, faces a real and immediate risk that Defendant's software will again intercept TRI.

## V.      CLASS ACTION ALLEGATIONS

### A.      The National Class

190. Plaintiffs bring this action individually and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3). The nationwide class is defined as follows:

> All individuals who, from 2018 to present, used a tax preparation system on which Defendant's software was deployed and whose tax return information was transmitted to or received by Defendant without a consent satisfying the requirements of 26 C.F.R. § 301.7216-3.

191. The proposed Class Members are similarly situated to Plaintiffs and to each other. The Class Members provided information to Defendant in a similar capacity and had their information used and disclosed in a similar manner, in violation of federal law.

192. Excluded from the Class are: Defendant; any judge conducting proceedings in this action and the judge's parents, spouses, and children as well as any other member of the judge's family residing in the judge's household; counsel of record in this action and their parents, spouses, and children as well as any other member of counsel's family residing in counsel's household; counsel's employees; and the legal representatives, heirs, successors and assigns of any excluded person. Plaintiffs reserve the right to modify, change, or expand the class definition set forth above based on discovery and further investigation.

193. **Numerosity:** The exact number of the members of the Class is not presently known but is so numerous that joinder of individual members is impracticable. Plaintiffs believe there to be millions of Class Members. Class

Members are readily identifiable from information and records in possession, custody, or control of Defendant.

194. **Commonality:** There are numerous issues of law and fact common to Plaintiffs and Class Members that predominate over any issue affecting only individual Class Members. Resolving these common issues will advance resolution of the litigation for all Class Members. These common issues of law and fact include, but are not limited to, the following:

a. Whether Defendant is a "tax return preparer" under the meaning of federal law;

b. Whether Defendant obtained "tax return information" as that term is defined under federal law;

c. Whether the consent mechanisms and disclosures presented on the tax preparation platforms on which Defendant's software was deployed complied with 26 C.F.R. § 301.7216-3;

d. Whether Defendant used any "tax return information" provided by putative Class Members in their advertising, analytics, and/or AI systems;

e. Whether Defendant disclosed any "tax return information" provided by putative Class Members to any third parties;

f. Whether Defendant violated 26 U.S.C. § 7216, 26 U.S.C. § 6713, and/or 18 U.S.C. § 2510 et seq.;

g. Whether Defendant's actions were negligent;

h. Whether Defendant has been unjustly enriched by their wrongful acts; and,

i. The nature and extent of class-wide injury and the measure of damages for those injuries.

195. **Typicality:** Plaintiffs' claims are typical of the claims of the other Class Members in that Plaintiffs, like all Class Members, are individuals who used a tax preparation website on which Defendant's software was deployed and whose TRI was intercepted and used by Defendant without lawful consent. Defendant has acted, or refused to act, on grounds generally applicable to the Class. Plaintiffs, like all Class Members, were damaged by Defendant's misconduct in that they suffered damages as a result of Defendant's interception, use, and disclosure of TRI. Furthermore, the factual bases of Defendant's misconduct are common to all Plaintiffs and represent a common thread of misconduct resulting in injury to all Class Members. Plaintiffs have the same interest in this matter as all Class Members, and Plaintiffs' claims arise out of the same set of facts and conduct as the claims of all Class Members. Plaintiffs and Class Members' claims all arise out of Defendant's unlawful practices of intercepting, using, and disclosing TRI without consent.

196. **Adequacy:** Plaintiffs have no interest that conflicts with the interests of the Class, understand and appreciate their duties to the Class, and are committed to pursuing this action vigorously. Plaintiffs have retained counsel who are competent and experienced in complex privacy and consumer protection action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

197. **Superiority:** A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. Even if Class Members could afford individualized litigation, the court system could not. Individualized litigation would increase delay and expense to all parties, and to the court system, because of the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly situated individuals. By contrast, the class action device presents far fewer

management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**B.    The State Classes**

198.   Plaintiffs Sheila Johnson and Shannon Rose bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually, on behalf of the general public, and on behalf of the following class of similarly situated individuals:

> **California Class**: All individuals whose tax return information was obtained by Defendant from a tax preparation system, was used by Defendant, or was disclosed to a third party by Defendant, each without a signed consent form that complies with 26 CFR § 301.7216-3 and who resided in or were citizens of the state of California at the time of the interception.

199.   Plaintiff Scott McMannes brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

> **Florida Class**: All individuals whose tax return information was obtained by Defendant from a tax preparation system, was used by Defendant, or was disclosed to a third party by Defendant, each without a signed consent form that complies with 26 CFR § 301.7216-3 and who resided in or were citizens of the state of Florida at the time of the interception.

200.   Plaintiffs Brain Troesch and Margie Ramos-Toro bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

> **Illinois Class**: All individuals whose tax return information was obtained by Defendant from a tax preparation system, was used by Defendant, or was disclosed to a third party by Defendant, each without a signed consent form that complies with 26 CFR § 301.7216-3 and who resided in or were citizens of the state of Illinois at the time of the interception.

201.   Plaintiff Michelle Dorry brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of a Class of the following class of similarly situated individuals:

**Maryland Class**: All individuals whose tax return information was obtained by Defendant from a tax preparation system, was used by Defendant, or was disclosed to a third party by Defendant, each without a signed consent form that complies with 26 CFR § 301.7216-3 and who resided in or were citizens of the state of Maryland at the time of the interception.

202.   Plaintiff Melissa Peace brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following Class of similarly situated individuals:

**Massachusetts Class**: All individuals whose tax return information was obtained by Defendant from a tax preparation system, was used by Defendant, or was disclosed to a third party by Defendant, each without a signed consent form that complies with 26 CFR § 301.7216-3 and who resided in or were citizens of the state of Massachusetts at the time of the interception.

203.   Plaintiff Dorie Leland brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

**Michigan Class**: All individuals whose tax return information was obtained by Defendant from a tax preparation system, was used by Defendant, or was disclosed to a third party by Defendant, each without a signed consent form that complies with 26 CFR § 301.7216-3 and who resided in or were citizens of the state of Michigan at the time of the interception.

204.   Plaintiff Monica Hatch brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

**Minnesota Class**: All individuals whose tax return information was obtained by Defendant from a tax preparation system, was used by

32

Defendant, or was disclosed to a third party by Defendant, each without a signed consent form that complies with 26 CFR § 301.7216-3 and who resided in or were citizens of the state of Minnesota at the time of the interception.

205.   Plaintiffs Steven Neff and Cheryl Gebo bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

> **New Hampshire Class**: All individuals whose tax return information was obtained by Defendant from a tax preparation system, was used by Defendant, or was disclosed to a third party by Defendant, each without a signed consent form that complies with 26 CFR § 301.7216-3 and who resided in or were citizens of the state of New Hampshire at the time of the interception.

206.   Plaintiffs Sandeep Trisal and Gregory Bassell bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

> **New York Class**: All individuals whose tax return information was obtained by Defendant from a tax preparation system, was used by Defendant, or was disclosed to a third party by Defendant, each without a signed consent form that complies with 26 CFR § 301.7216-3 and who resided in or were citizens of the state of New York at the time of the interception.

207.   Plaintiff Sara Bullard brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

> **Pennsylvania Class**: All individuals whose tax return information was obtained by Defendant from a tax preparation system, was used by Defendant, or was disclosed to a third party by Defendant, each without a signed consent form that complies with 26 CFR § 301.7216-3 and who resided in or were citizens of the state of Pennsylvania at the time of the interception.

33

208.   Plaintiff William Kopatich brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) individually and on behalf of the following class of similarly situated individuals:

> **Washington Class**: All individuals whose tax return information was obtained by Defendant from a tax preparation system, was used by Defendant, or was disclosed to a third party by Defendant, each without a signed consent form that complies with 26 CFR § 301.7216-3 and who resided in or were citizens of the state of Washington at the time of the interception.

209.   The proposed State Class Members are similarly situated to Plaintiffs and to each other. The State Class Members provided information to Defendant in a similar capacity and had their information used and disclosed in a similar manner, in violation of federal and state law.

210.   Excluded from each Class are the same categories of individuals excluded from the National Class.

211.   **Numerosity:** The exact number of the members of each Class is not presently known but is so numerous that joinder of individual members is impracticable. Plaintiffs believe there to be millions of state Class Members. Class Members are readily identifiable from information and records in possession, custody, or control of Defendant.

212.   **Commonality**: There are numerous issues of law and fact common to Plaintiffs and Class Members that predominate over any issue affecting only individual Class Members. Resolving these common issues will advance resolution of the litigation for all Class Members. These common issues of law and fact include, but are not limited to, the following:

a.      Whether Defendant is a "tax return preparer" under the meaning of federal and state law;

34

b. Whether Defendant obtained "tax return information" as that term is defined under federal and state law;

c. Whether Defendant violated the California Consumer Legal Remedies Act, Cal. Civ. Code §1750 et seq.

d. Whether Defendant violated the California Unfair Competition Law, Cal. Bus. & Prof. § 17200 et seq.;

e. Whether Defendant violated the California Invasion of Privacy Act, Cal. Penal Code § 630 et seq.;

f. Whether Defendant violated Cal. Bus. & Prof. Code § 17530.5;

g. Whether Defendant violated the California Tax Preparation Act, Cal. Bus. & Prof. Code §22250 et seq.;

h. Whether Defendant committed the common law tort of intrusion upon seclusion;

i. Whether Defendant violated the Florida Security of Communications Act, Fla. Stat. § 934.03;

j. Whether Defendant violated the Illinois Eavesdropping Statute, 720 Ill. Comp. Stat. 5/14;

k. Whether Defendant violated the Maryland Wiretap Statute, Md. Cts. & Jud. Proc. § 10-402

l. Whether Defendant violated the Massachusetts Wiretap Act, Mass. Gen. Laws ch. 272, § 99;

m. Whether Defendant violated the Michigan Wiretap Statute, Mich. Comp. Law § 750.539c;

n. Whether Defendant violated the Minnesota Wiretap Statute, Minn. Stat. Ann. §626A.01 et seq.;

o. Whether Defendant violated the New Hampshire Wiretap Statute, N.H. Rev. Stat. § 570-A:2;

p.      Whether Defendant violated the New York Deceptive Practices Act, N.Y. Gen. Bus. Law §349;

q.      Whether Defendant violated the Pennsylvania Wiretap Statute, 18 Pa. Cons. Stat. § 5703;

r.      Whether Defendant violated the Washington Privacy Act, Wash. Rev. Code § 9.73 et seq.;

s.      Whether Defendant engaged in the alleged conduct willfully or intentionally;

t.      Whether the Plaintiffs, Class Members, and general public are entitled to injunctive relief and other equitable relief and, if so, what is the nature of such relief; and,

u.      The nature and extent of class-wide injury and the measure of damages for those injuries.

213. **Typicality**: Plaintiffs' claims are typical of the claims of the other State Class Members in that Plaintiffs, like all Class Members, are individuals who used a tax preparation system where Defendant's code was installed and who, as a result, had their TRI intercepted and used by Defendant.

214. Defendant has acted, or refused to act, on grounds generally applicable to each state Class. Plaintiffs, like all Class Members, were damaged by Defendant's misconduct in that they suffered damages as a result of Defendant's interception, use, and disclosure of tax information. Furthermore, the factual bases of Defendant's misconduct are common to all Plaintiffs and represent a common thread of misconduct resulting in injury to all members of each Class. Plaintiffs have the same interest in this matter as all Class Members, and Plaintiffs claims arise out of the same set of facts and conduct as the claims of all Class Members. Plaintiffs and each Class Members' claims all arise out of Defendant's unlawful practices of intercepting, using, and disclosing TRI without consent.

36

215. **Adequacy**: Plaintiffs have no interest that conflicts with the interests of the Class, understand and appreciate their duties to the Class, and are committed to pursuing this action vigorously. Plaintiffs have retained counsel competent and experienced in complex privacy class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of each Class.

216. **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of each Class. Even if Class Members could afford individualized litigation, the court system could not. Individualized litigation would increase delay and expense to all parties, and to the court system, because of the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly situated individuals. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

217. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**VI.   CAUSES OF ACTION**

**First Cause of Action**
**Electronic Communications Privacy Act**
**(18 U.S.C. § 2510 et seq.)**
**On Behalf of Plaintiffs and the National Class**

218. Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

219. The ECPA prohibits intentionally intercepting any electronic communication, intentionally disclosing to any other person the contents of an

electronic communication, knowing or having reason to know that the information was obtained through an unlawful interception, and intentionally using the contents of an electronic communication, knowing or having reason to know that the information was obtained through an unlawful interception, § 2511(1)(d).

220. Plaintiffs and Class Members' interactions with the tax preparation systems on which Defendant's software was deployed—including their entry of TRI into form fields, their navigation through the tax interview, and their submission of completed returns—were electronic communications within the meaning of 18 U.S.C. § 2510(12).

221. Those communications conveyed contents within the meaning of 18 U.S.C. § 2510(8), including details of their TRI.

222. Defendant's tracking software is an electronic, mechanical, or other device within the meaning of 18 U.S.C. § 2510(5).

223. Defendant used that software to acquire the contents of Plaintiffs and Class Members' communications.

224. Defendant acquired the contents of those communications contemporaneously with their transmission, within the meaning of 18 U.S.C. § 2510(4). Defendant's software operated as a real-time relay: at the moment a taxpayer entered data or it was received by their preparer, Defendant's software captured that entry and transmitted it to Defendant's servers in parallel with the taxpayer's ongoing communication with their tax preparer.

225. Defendant acquired the contents of those communications intentionally. Defendant designed, marketed, and deployed their software to capture taxpayers' real-time entries on the systems where taxpayers prepared their returns.

226. Defendant was not a party to the communications between Plaintiffs and Class Members and the tax preparation systems. Defendant separately received the contents of those communications on Defendant's own or designated servers,

retained them, analyzed them, and used and disclosed them for commercial purposes, including behavioral analytics, audience construction, model training, and product improvement, as alleged in Section III(F). Plaintiffs and Class Members did not consent to that interception, use, or disclosure.

227. Defendant intercepted Plaintiffs and Class Members' communications for the purpose of using and disclosing the captured TRI for commercial purposes—including behavioral profiling, advertising analytics, audience construction, and model training—that are criminal under 26 U.S.C. § 7216 and tortious under the state laws alleged herein. That criminal and tortious purpose was separate and independent from the act of interception and existed at the time of each interception.

228. Defendant intentionally disclosed the contents of the intercepted communications in violation of 18 U.S.C. § 2511(1)(c), including by disclosing TRI to its tax preparation company clients as alleged in Section III(F).

229. Defendant intentionally used the contents of the intercepted communications in violation of 18 U.S.C. § 2511(1)(d), including for behavioral profiling, advertising analytics, audience construction, model training, and other non-tax-preparation purposes alleged in Section III(F).

230. Defendant intentionally manufactured, assembled, and/or sold the tracking devices described in Section III (D) and (E), knowing that the design rendered them primarily useful for the purpose of surreptitious interception of wire, oral, and electronic communications, and sent such devices through interstate commerce, in violation of 18 U.S.C. § 2512(1)(b).

231. Defendant's violations of 18 U.S.C. §§ 2511 and 2512 give rise to a civil action under 18 U.S.C. § 2520.

232. Defendant's interception, use, and disclosure of Plaintiffs and Class Members' TRI without lawful consent invaded a concrete privacy interest that Congress identified and made legally protected in enacting the ECPA, and deprived

39

Plaintiffs and Class Members of their right to control the use and disclosure of that information. That invasion was directly and proximately caused by Defendant's conduct.

233. Each tax preparation session conducted on a platform on which Defendant's software was deployed was a distinct act of interception and a separate violation of 18 U.S.C. § 2511(1)(a).

234. Plaintiffs and Class Members may recover statutory damages under 18 U.S.C. § 2520(c)(2), in an amount the Court considers just, up to the greater of $100 per day of violation or $10,000 per violation. Because each tax preparation session was a separate violation, each Plaintiff and Class Member is entitled to statutory damages for each session in which Defendant intercepted their communications.

235. Plaintiffs and Class Members may recover their actual damages under 18 U.S.C. § 2520(b)(2). To the extent Defendant extracted economic value from Plaintiffs and Class Members' TRI—through the behavioral profiles, advertising audiences, and artificial intelligence models Defendant built from that information—that extracted value is an additional measure of actual damages.

236. Plaintiffs and Class Members are entitled to punitive damages and to reasonable attorneys' fees and litigation costs, pursuant to 18 U.S.C. § 2520(b).

237. Plaintiffs and Class Members are entitled to injunctive and declaratory relief pursuant to 18 U.S.C. § 2520(b)(1) to end Defendant's continued interception, disclosure, and use of their TRI.

### Second through Ninth Causes of Action – California Law Claims

238. Plaintiffs bring nine claims under California law arising from the interception, use, and disclosure of their TRI. The Second, Third, Fourth, and Fifth Causes of Action arise under the California Invasion of Privacy Act, Cal. Penal Code §§ 631, 632, 635, and 638.51, respectively. The Sixth, Seventh, and Eighth Causes

of Action arise under the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq., the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., and Cal. Bus. & Prof. Code § 17530.5. The Ninth Cause of Action arises under the California Tax Preparer Regulation Statute, Cal. Bus. & Prof. Code § 22250 et seq. The Tenth Cause of Action arises under California common law prohibiting an intrusion upon the seclusion of another.

239. The Second through Tenth Causes of Action are brought on behalf of the National Class and, alternatively the California Class, as set forth in each cause of action.

240. Cal. Penal Code § 631, reaches the real-time interception of communications, § 632 reaches the recording of confidential communications without all-party consent, § 635 reaches the manufacture, sale, and furnishing of devices designed for eavesdropping, and § 638.51 reaches the interception of routing, addressing, or signaling information. The Consumer Legal Remedies Act, the Unfair Competition Law, and § 17530.5 reach Defendant's deceptive and unlawful business practices and their unauthorized disclosure of TRI. The California Tax Preparer Regulation Statute provides a civil remedy against tax preparers, including Defendant, who violate § 17530.5 or 26 U.S.C. § 7216 or who engage in dishonest or corrupt acts related to tax preparation.

241. The factual predicate for the Second through Tenth Causes of Action is the conduct alleged in Sections III(D) through III(H): Defendant embedded session-recording and tracking software in the tax preparation computer systems used by Plaintiffs and Class Members; captured their TRI in real time as it was entered; and used and disclosed that information for commercial purposes without lawful consent.

242. The consent failure is common to the class. As alleged in Section III(H), no Plaintiff or Class Member was presented with, or provided, the written

41

consent that federal law requires before TRI may be disclosed or used for any non-preparation purpose. TIGTA examined the consent statements of the four leading online tax-preparation providers and found them noncompliant, and the IRS agreed.

243. Plaintiffs and Class Members seek, for the Second through Fifth Causes of Action, statutory damages of $5,000 per violation or three times actual damages under Cal. Penal Code § 637.2, plus injunctive relief and attorneys' fees; for the Sixth Cause of Action, injunctive relief and restitution under the CLRA, reserving actual damages pending the CLRA's notice requirement; for the Seventh and Eighth Causes of Action, injunctive relief and restitution; and for the Ninth Cause of Action, a civil penalty of $1,000 per violation under Cal. Bus. & Prof. Code § 22257 for the violations of § 22253(a)(2) and § 22253(a)(18), plus injunctive relief, attorneys' fees, and costs.

## Second Cause of Action
### California Invasion of Privacy Act
### (Cal. Pen. Code § 631)
### On Behalf of Plaintiffs and the National Class, or alternatively on behalf of California Plaintiffs and the California Class

244. Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

245. Plaintiffs, individually and on behalf of the National Class, or alternatively Sheila Johnson and Shannon Rose (the "California Plaintiffs") on behalf of the California Class, bring this claim for violations of Cal. Penal Code § 631. Defendant violated § 631(a) in four ways: by making an unauthorized connection with Plaintiffs and Class Members' communications; by reading or learning the contents of those communications in transit without all-party consent; by using the information so obtained; and by aiding and conspiring with the tax preparation companies to do so.

246. Plaintiffs and Class Members' transfers of TRI to the tax preparers and the Internal Revenue Service were electronic communications transmitted by wire or cable from Plaintiffs to the tax preparation companies' servers and the IRS, within the meaning of § 631(a).

247. Defendant's session-recording and tracking software, APIs, together with the server infrastructure to which it transmits, is a machine, instrument, contrivance, or other manner within the meaning of § 631(a).

248. Defendant made an unauthorized connection with the communications channels over which Plaintiffs and Class Members transmitted their TRI, by deploying their session-recording and tracking software on the tax preparation companies' computer systems, in violation of the first clause of § 631(a).

249. Defendant willfully, and without the consent of all parties, read or learned the contents of those communications—including TRI entered into forms, the identity of taxpayers, the forms/URLs they used, and their other TRI as described above—while the communications were in transit, in violation of the second clause of § 631(a). As alleged in Section III(E), Defendant's capture was contemporaneous with transmission.

250. Defendant used the TRI obtained, including for behavioral profiling, model training, and advertising analytics as alleged in Section III(F), in violation of the third clause of § 631(a).

251. Defendant aided, agreed with, and conspired with the tax preparation companies to intercept, use, and disclose Plaintiffs and Class Members' TRI, in violation of the fourth clause of § 631(a). As alleged in Section III(D), the tax preparation companies contracted with Defendant to deploy Defendant's session-recording and tracking tools, and that deployment was the mechanism of interception.

252. Plaintiffs and Class Members did not consent to Defendant's interception. As alleged in Section III(H), no consent was obtained that satisfies the all-party consent standard of § 631 or the written-consent standard of 26 C.F.R. § 301.7216-3, and TIGTA found the consent statements actually used categorically noncompliant.

253. Plaintiffs and Class Members did not know that Defendant was a party to, or was intercepting, their communications with the tax preparation platforms.

254. Defendant's violations of § 631(a) invaded Plaintiffs and Class Members' protected privacy interest in their confidential communications and TRI and deprived them of control over that information. That invasion is itself the injury and was directly and proximately caused by Defendant's conduct.

255. Each tax preparation session conducted on a platform on which Defendant's software was deployed was a distinct act of interception and a separate violation of § 631(a).

256. Each Plaintiff and Class Member is entitled to the greater of $5,000 per violation or three times actual damages, pursuant to Cal. Penal Code § 637.2.

257. Defendant's violations are ongoing. Plaintiffs and Class Members seek an injunction preventing Defendant's continued interception of their electronic communications.

**Third Cause of Action**
**California Invasion of Privacy Act**
**(Cal. Pen. Code § 632)**
**On Behalf of Plaintiffs and the National Class, or alternatively**
**on behalf of California Plaintiffs and the California Class**

258. Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

259. Plaintiffs, individually and on behalf of the National Class, or alternatively the California Plaintiffs, individually and on behalf of the California

Class, bring this claim for violations of Cal. Penal Code § 632. Defendant violated § 632(a) by intentionally, and without the consent of all parties, using an electronic recording device to eavesdrop upon and record Plaintiffs and Class Members' confidential communications with the tax preparation platforms and the Internal Revenue Service.

260. Defendant's session-recording and tracking software, together with the server infrastructure to which it transmits, is an electronic amplifying or recording device within the meaning of § 632(a). As alleged in Section III(E), its function is to capture, record, and transmit the content of TRI entered during a tax preparation session.

261. Plaintiffs and Class Members' communications with the tax preparation platforms and the IRS were confidential communications within the meaning of § 632(c). Plaintiffs and Class Members reasonably expected that their TRI would not be recorded by a third-party, an expectation reinforced by the federal and California laws that protect TRI from unauthorized disclosure. As alleged in Section III(H), the consent forms presented to them identified no such recipient.

262. Defendant used their software to eavesdrop upon and record those confidential communications—the real-time transfer of TRI—as the communications were being made, as alleged in Section III(E).

263. Section 632(a) requires the consent of all parties before a confidential communication may be recorded. As alleged in Section III(H), the consent forms presented to Plaintiffs and Class Members identified no third-party recipient of their TRI, and TIGTA found those forms noncompliant.

264. Plaintiffs and Class Members did not know that Defendant was recording their TRI and never consented to that recording.

265. Defendant's violations of § 632(a) invaded Plaintiffs and Class Members' protected privacy interest in their confidential communications and TRI

and deprived them of control over that information. That invasion is itself the injury and was directly and proximately caused by Defendant's conduct.

266. Each tax preparation session conducted on a platform on which Defendant's software was deployed was a distinct act of eavesdropping and recording and a separate violation of § 632(a).

267. Each Plaintiff and Class Member is entitled to the greater of $5,000 per violation or three times actual damages, pursuant to Cal. Penal Code § 637.2.

268. Defendant's violations are ongoing. Plaintiffs and Class Members seek an injunction preventing Defendant's continued eavesdropping upon and recording of their electronic communications.

### Fourth Cause of Action
### California Invasion of Privacy Act
### (Cal. Pen. Code § 635)
### On Behalf of Plaintiffs and the National Class, or alternatively on behalf of California Plaintiffs and the California Class

269. Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

270. Plaintiffs, individually and on behalf of the National Class, or alternatively the California Plaintiffs, individually and on behalf of the California Class, bring this claim for violations of Cal. Penal Code § 635. Defendant violated § 635(a) by manufacturing, assembling, selling, offering for sale, advertising, possessing, transporting, and furnishing a device—the session-replay and data-harvesting tools described in Sections III(D) and III(E)—designed primarily for eavesdropping upon the communications of another.

271. Defendant's software is a device primarily designed for eavesdropping within the meaning of § 635(a). As alleged in Sections III(D) and III(E), the software's core function is to capture, in real time, the content and other user

46

interactions on the websites where it is deployed, and to transmit that data to Defendant's servers.

272. As alleged in Section III(D), Defendant manufactured, assembled, and sold that software as a commercial product, and offered, advertised, and furnished it to their tax preparation company clients, including H&R Block, TaxSlayer, and Intuit TurboTax.

273. Defendant's violations of § 635(a) invaded Plaintiffs and Class Members' protected privacy interest in their confidential communications and TRI and deprived them of control over that information. That invasion is itself the injury and was directly and proximately caused by Defendant's conduct.

274. Each tax preparation session conducted on a platform on which Defendant's software was deployed was a distinct use of Defendant's eavesdropping device.

275. Each Plaintiff and Class Member is entitled to the greater of $5,000 per violation or three times actual damages, pursuant to Cal. Penal Code § 637.2.

276. Defendant's violations are ongoing. Plaintiffs and Class Members seek an injunction requiring Defendant to disable or recall the eavesdropping-capable components of their software deployed on any tax preparation system.

**Fifth Cause of Action**
**California Invasion of Privacy Act**
**(Cal. Pen. Code § 638.51)**
**On Behalf of Plaintiffs and the National Class, or alternatively**
**on behalf of California Plaintiffs and the California Class**

277. Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

278. Plaintiffs, individually and on behalf of the National Class, or alternatively the California Plaintiffs, individually and on behalf of the California

47

Class, bring this claim for violations of Cal. Penal Code § 638.51. Defendant violated § 638.51(a) by installing and using a pen register or tap-and-trace device—the tracking and data-harvesting tools described in Sections III(D) and III(E).

279.  Defendant's software is a device that captures and transmits routing, addressing, and signaling information. As alleged in Sections III(D) and III(E), the software's core function is to capture, in real time, the content and other user interactions on the websites where it is deployed, and to transmit that data to Defendant's servers.

280.  The software additionally captures and transmits routing, addressing, and signaling information, including IP address, browser name and version, screen resolution information, device identifiers, and pages accessed, all to create a "fingerprint" of users' devices, link those devices to known IDs and people, and track those users' activities both online and offline.

281.  As alleged in Section III(D), Defendant manufactured, assembled, and sold that software as a commercial product, and offered, advertised, and furnished it to their tax preparation company clients.

282.  Defendant's violations of § 638.51(a) invaded Plaintiffs and Class Members' protected privacy interests in their TRI and deprived them of control over that information. That invasion is itself the injury and was directly and proximately caused by Defendant's conduct.

283.  Each Plaintiff and Class Member is entitled to the greater of $5,000 per violation or three times actual damages, pursuant to Cal. Penal Code § 637.2.

284.  Defendant's violations are ongoing. Plaintiffs and Class Members seek an injunction requiring Defendant to disable or recall the pen register and tap-and-trace functions of their software deployed on any tax preparation system.

**Sixth Cause of Action**
**California Consumer Legal Remedies Act**
**(Cal. Civ. Code § 1750, et seq.)**
**On Behalf of Plaintiffs and the National Class, or alternatively**
**on behalf of California Plaintiffs and the California Class**

285.   Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

286.   Plaintiffs, individually and on behalf of the National Class, or alternatively the California Plaintiffs, individually and on behalf of the California Class, bring this claim for violations of Cal. Civ. Code § 1770(a). Defendant engaged in unfair and deceptive acts in connection with the sale of services to consumers, in violation of § 1770(a)(2), § 1770(a)(5), and § 1770(a)(14).

287.   Plaintiffs and Class Members are consumers within the meaning of Cal. Civ. Code § 1761(d); each purchased tax preparation services from a company whose website carried Defendant's software. Each transaction was a transaction within § 1761(e), and Defendant is a person within § 1761(c).

288.   Defendant provided services within the meaning of § 1761(b). As alleged in Section III(F), Defendant embedded their session-recording and tracking software in the tax preparation companies' computer systems and extracted value from the consumer relationship by capturing Plaintiffs and Class Members' TRI and monetizing it through behavioral profiles, model training, and advertising analytics.

289.   In the alternative, even if Defendant's services are characterized as business-to-business, they were rendered in a consumer transaction in which Plaintiffs and Class Members were the intended end users and the source of the data Defendant was paid to extract.

290.   Defendant violated § 1770(a)(2) by misrepresenting the source, sponsorship, and approval of the services provided. As alleged in Section III(H), the user-facing privacy policies and terms of service identified no third-party recipient

49

of TRI, and no consent identified Defendant by name as required by 26 C.F.R. § 301.7216-3.

291. Defendant violated § 1770(a)(5) by misrepresenting that the services had privacy and data-use characteristics—limiting TRI to tax preparation purposes—that they did not have.

292. Defendant violated § 1770(a)(14) by misrepresenting that the transactions involved only the data uses disclosed, when in fact they involved the covert collection and commercial exploitation of TRI by a third party.

293. Defendant's violations caused Plaintiffs and Class Members injury because they purchased tax-preparation services represented and understood to involve confidential handling of TRI, but instead received a materially different service in which an undisclosed third party intercepted and commercially exploited that information.

294. Plaintiffs seek injunctive relief under the CLRA to halt Defendant's ongoing practices. Legal damages alone cannot prevent Defendant's continued retention, downstream use, or future reuse of previously captured TRI, and Plaintiffs therefore lack an adequate remedy at law for that prospective harm.

295. Pursuant to Cal. Civ. Code § 1782, Plaintiffs will provide Defendant with written notice and demand before seeking damages under the CLRA. Unless and until the statutory notice and cure period have been satisfied, this Count seeks injunctive relief only, and Plaintiffs reserve the right to amend to seek damages and any other relief then available under the CLRA.

**Seventh Cause of Action**
**California Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200 et seq.)**
**On Behalf of Plaintiffs and the National Class, or alternatively**
**on behalf of California Plaintiffs and the California Class**

296.    Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

297.    Plaintiffs, individually and on behalf of the National Class, or alternatively the California Plaintiffs, individually and on behalf of the California Class, bring this claim for violations of Cal. Bus. & Prof. Code § 17200. Defendant engaged in unlawful, unfair, and fraudulent business practices.

298.    Defendant's conduct is unlawful because it violates Cal. Penal Code §§ 631, 632, and 635; 18 U.S.C. §§ 2511(1)(a), (c), and (d); 26 U.S.C. §§ 7216 and 6713; Cal. Bus. & Prof. Code § 17530.5; and Cal. Bus. & Prof. Code § 22253, including § 22253(a)(2), (a)(7), (a)(8), and (a)(18). Each of these violations is independently alleged in this Complaint, and each independently satisfies the unlawful prong; the unlawful-prong claim does not depend on any single predicate. To the extent any predicate statute reaches Defendant only upon proof that Defendant provided services in connection with the preparation of returns for compensation or acted as agents of the tax preparation companies, Plaintiffs allege those facts and rely on those predicates accordingly; the remaining predicates, including Cal. Penal Code §§ 631, 632, and 635 and 18 U.S.C. § 2511, do not depend on that showing.

299.    Defendant's conduct is unfair. Defendant's surreptitious interception of taxpayers' TRI, without notice, without compliant consent, and without benefit to the consumers whose data was taken, causes harm that outweighs any utility of the practice.

51

300. Defendant's conduct also violates the policies embodied in CIPA, Cal. Penal Code §§ 631, 632, 635, and 638.51 and the California Tax Preparer Regulation Statute, Cal. Bus. & Prof. Code § 22250 et seq., which were enacted to protect against the unauthorized capture and commercial use of private communications and TRI. As alleged in Section III(G), Defendant knew their conduct was inconsistent with those policies and proceeded anyway.

301. Defendant's conduct is fraudulent because it was likely to deceive the public. As alleged in Section III(H), the user-facing privacy policies and terms of service governing Plaintiffs and Class Members' tax preparation sessions disclosed neither Defendant's identity nor their role as recipients of TRI, and Defendant participated in and benefited from that omission.

302. Plaintiffs and Class Members lost money or property as a result of Defendant's conduct because they paid for tax-preparation services that were represented and understood to involve confidential handling of TRI, but received a materially different service in which Defendant simultaneously intercepted and commercially exploited that information.

303. Plaintiffs and Class Members have no adequate remedy at law for the prospective harm. Legal damages cannot prevent Defendant's continued retention and future use of previously captured TRI.

304. Plaintiffs seek injunctive relief under the UCL to halt Defendant's ongoing practices, including continued retention and future use of previously captured TRI.

**Eighth Cause of Action**
**Unlawful Disclosure of Tax Return Information by a Tax Preparer**
**(Cal. Bus. & Prof. Code § 17530.5)**
**On Behalf of Plaintiffs and the National Class, or alternatively**
**on behalf of California Plaintiffs and the California Class**

305.   Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

306.   Plaintiffs, individually and on behalf of the National Class, or alternatively the California Plaintiffs, individually and on behalf of the California Class and the National Class, bring this claim for violations of Cal. Bus. & Prof. Code § 17530.5. Defendant violated § 17530.5 by disclosing TRI obtained in the business of preparing, or assisting in preparing, federal or state income tax returns, without lawful consent and for purposes other than tax preparation.

307.   Defendant, through its contracts with tax return preparers, was an agent of those tax return preparers.

308.   Section 17530.5(a) reaches any person engaged in the covered business "or any employee or agent thereof."

309.   As alleged in Sections III(D) and III(E), Defendant captured TRI on behalf of and at the direction of the tax preparation companies during the preparation of returns.

310.   In the alternative, Defendant is also a person engaged in the business of assisting taxpayers in the preparation of federal and state income tax returns for compensation within the meaning of Cal. Bus. & Prof. Code § 17530.5(b)(2).

311.   As alleged in Sections III(D), III(E), and III(F), the tax preparation companies compensated Defendant to embed and operate their software within the return-preparation workflow, and that software obtained TRI directly from the preparation process.

53

312. Defendant disclosed TRI obtained through their software's interception of Plaintiffs and Class Members' tax preparation sessions, as alleged in Section III(E), to their commercial customers and through model pipelines, as alleged in Section III(F).

313. Each such disclosure was a disclosure for a purpose other than tax preparation, made without consent satisfying § 17530.5(a)(1), and none was authorized by § 17530.5(a)(2) through (a)(4).

314. Section 17530.5(c) further provides that a prohibited disclosure includes a disclosure made internally within the entity for any purpose other than tax preparation, or made to any of its subsidiaries or affiliates.

315. As alleged in Section III(F), Defendant used the captured TRI internally for purposes other than tax preparation, including building behavioral profiles, training models, and constructing advertising audiences.

316. Defendant's transfers of TRI to the tax preparation companies who hired them was not necessary for the preparation of tax returns.

317. Defendant's violations of § 17530.5 invaded Plaintiffs and Class Members' protected interest in the confidentiality of their TRI and deprived them of control over its use and disclosure. That invasion is itself the injury and was directly and proximately caused by Defendant's conduct.

318. Defendant's violations are ongoing; absent injunctive relief, future taxpayers using the same platforms will be subject to the same unauthorized disclosures. Plaintiffs and Class Members have no adequate remedy at law because equitable restitution is not coextensive with compensatory damages.

319. Plaintiffs seek an injunction prohibiting Defendant from continuing to disclose TRI in violation of § 17530.5, and restitution of all amounts by which Defendant was unjustly enriched by those disclosures.

**Ninth Cause of Action**
**California Tax Preparer Regulation Statute**
**(Cal. Bus. & Prof. Code § 22250 et seq.)**
**On Behalf of Plaintiffs and the National Class, or alternatively**
**on behalf of California Plaintiffs and the California Class**

320.　Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

321.　Plaintiffs, individually and on behalf of the National Class, or alternatively the California Plaintiffs, individually and on behalf of the California Class, bring this claim for violations of Cal. Bus. & Prof. Code § 22253.

322.　Defendant violated § 22253(a)(2) by making fraudulent, untrue, or misleading statements to induce persons to use tax preparation services.

323.　Defendant violated § 22253(a)(7), which incorporates violations of Cal. Bus. & Prof. Code § 17530.5.

324.　Defendant violated § 22253(a)(8), which incorporates violations of 26 U.S.C. § 7216.

325.　Defendant violated § 22253(a)(14), which prohibits directly or indirectly assisting in or abetting the violation of any other provision of that chapter, and violated § 22253(a)(18) by committing fraudulent, dishonest, or corrupt acts substantially related to the duties of a tax preparer.

326.　Under Cal. Bus. & Prof. Code § 22257(a), any person may maintain an action to enforce a duty specifically imposed by that chapter, to recover a civil penalty of one thousand dollars ($1,000), or for both, and under § 22257(b) a prevailing plaintiff recovers reasonable attorney's fees and costs.

327.　Each tax preparation session conducted on a platform on which Defendant's software was deployed was a distinct act of interception, and each subsequent use or disclosure of the TRI so obtained, as alleged in Section III(F), was a further separate violation.

55

328. Defendant's violations of § 22253 invaded Plaintiffs and Class Members' protected interest in the confidentiality of their TRI and deprived them of control over its use and disclosure. That invasion is itself the injury and was directly and proximately caused by Defendant's conduct.

329. For Defendant's violations of the duties imposed by § 22253, each Plaintiff and Class Member is entitled, pursuant to Cal. Bus. & Prof. Code § 22257, to a civil penalty of one thousand dollars ($1,000) per violation, plus attorneys' fees and costs.

330. Defendant's violations are ongoing. Plaintiffs seek an injunction prohibiting Defendant from continuing to engage in the conduct that violates § 22253.

**Tenth Cause of Action**
**California Intrusion Upon Seclusion**
**(California common law)**
**On Behalf of Plaintiffs and the National Class, or alternatively**
**on behalf of California Plaintiffs and the California Class**

331. Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

332. Plaintiffs, individually and on behalf of the National Class, or alternatively the California Plaintiffs, individually and on behalf of the California Class, bring this claim for violations of the California common law.

333. California law prohibits intrusion into the seclusion of another.

334. Plaintiffs' and absent Class Members' communication of tax information to their tax preparers and the IRS was a private place, conversation, or matter.

56

335. Plaintiffs' and absent Class Members had a reasonable expectation of privacy in their tax information and the communication of that information to their tax preparers and the IRS.

336. Defendant, through use of their tracking technology on Plaintiffs and absent Class Members, intruded into those Plaintiffs' and Class Members' private place, conversation or matter.

337. The interception of tax information and communications of that tax information to a tax preparer and the IRS without consent is highly offensive to a reasonable person.

338. Defendant, through their use of tracking tools and their agreements with tax preparers, intended to obtain the information and communications between Plaintiffs and Class Members, on the one hand, and their tax preparers and the IRS, on the other.

339. Plaintiffs are entitled to the amount which will compensate for all the detriment proximately caused by the intrusion upon their seclusion, whether it could have been anticipated or not, and at least nominal damages for the interference with their personal autonomy.

340. Defendant did not seek Plaintiffs' and absent Class Members' consent to intercept tax information and communications as required by federal law.

341. Defendant acted with willful disregard for Plaintiffs' and absent Class Members' rights to be free from the intrusion upon their private matters and communications, and concealed the material facts about their interceptions of tax information and communications.

342. Plaintiffs, individually and on behalf of absent Class Members, seek punitive or exemplary damages for the oppressive, malicious, and fraudulent conduct of Defendant.

**Eleventh Cause of Action**
**Florida Security of Communications Act**
**(Fla. Stat. § 934.03)**
**On Behalf of Plaintiffs and the Florida Class**

343.   Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

344.   Plaintiff Scott McMannes, individually and on behalf of the Florida Class, brings this claim for violations of the Florida Security of Communications Act, Fla. Stat. § 934.03. Defendant intentionally intercepted the contents of Plaintiffs and Class Members' electronic communications in violation of § 934.03(1)(a), intentionally used those contents in violation of § 934.03(1)(c), and intentionally disclosed those contents in violation of § 934.03(1)(d).

345.   Plaintiffs and Class Members' transmission of TRI to their tax preparers and the IRS were electronic communications within the meaning of Fla. Stat. § 934.02(12). As alleged in Section III(E), Defendant intercepted them contemporaneously with their transmission.

346.   The TRI intercepted includes information concerning the substance, purport, or meaning of the communication, including the pages loaded and tax forms used, the identity of the taxpayer, and details of their interactions with their tax return preparer.

347.   Defendant's interception was intentional. As alleged in Section III(G), Defendant designed, deployed, and operated their session-recording and tracking software on the platforms where Plaintiffs and Class Members entered their TRI.

348.   Defendant used and disclosed that TRI for commercial purposes unrelated to tax preparation, as alleged in Section III(F). Each such use violated § 934.03(1)(c) and each such disclosure violated § 934.03(1)(d).

349. Plaintiffs and Class Members did not consent to Defendant's interception, use, or disclosure. As alleged in Section III(H), no consent satisfying Florida's all-party requirement or 26 C.F.R. § 301.7216-3 was obtained, and TIGTA found the consent statements used noncompliant.

350. Defendant's violations of § 934.03 invaded Plaintiffs and Class Members' protected privacy interest in their intercepted communications and TRI and deprived them of control over that information. That invasion is itself the injury and was directly and proximately caused by Defendant's conduct.

351. Each tax preparation session conducted on a platform on which Defendant's software was deployed was a distinct act of interception, and each subsequent use or disclosure of the TRI so obtained was a further separate violation.

352. Pursuant to Fla. Stat. § 934.10, each Plaintiff and Class Member is entitled to the greater of actual damages or liquidated damages of $100 per day of violation or $1,000.

353. Plaintiffs and Class Members also seek punitive damages and reasonable attorneys' fees and costs pursuant to Fla. Stat. § 934.10.

354. Defendant's violations are ongoing. Plaintiffs and Class Members seek an injunction requiring Defendant to cease intercepting their electronic communications and to destroy TRI collected without lawful consent.

**Twelfth Cause of Action**
**Illinois Eavesdropping Statute**
**(720 Ill. Comp. Stat. 5/14)**
**On Behalf of Plaintiffs and the Illinois Class**

355. Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

59

356. Plaintiffs Brain Troesch and Margie Ramos-Toro, individually and on behalf of the Illinois Class, bring this claim for violations of the Illinois Eavesdropping Statute, 720 ILCS 5/14-2(a)(3). Defendant knowingly and intentionally intercepted, recorded, and transcribed, in a surreptitious manner, private electronic communications to which it was not a party, without the consent of all parties.

357. Plaintiffs and Class Members' transmission of TRI to their tax return preparers and the IRS were private electronic communications within the meaning of 720 ILCS 5/14-1. Plaintiffs and Class Members intended those communications to be private, and the federal and Illinois laws protecting TRI confirm the reasonableness of that expectation.

358. The TRI intercepted includes information concerning the existence, substance, purport, or meaning of the communication, including the pages loaded and tax forms used, the identity of the taxpayer, and details of their interactions with their tax return preparer.

359. Defendant's interception, recording, and transcription were knowing and intentional. As alleged in Section III(G), Defendant designed, deployed, and operated their software to capture user inputs during active TRI entry.

360. Defendant's interception was surreptitious. As alleged in Sections III(G) and III(H), Defendant's software operated invisibly in the background of the sessions, and no consent document disclosed Defendant's identity or their role as recipients of TRI.

361. Defendant was not a party to Plaintiffs and Class Members' communications, which were between Plaintiffs and Class Members and their tax preparers. As alleged in Section III(E), Defendant inserted their software into that channel to intercept the data as it was entered.

362. Plaintiffs and Class Members did not consent to Defendant's interception, recording, or transcription. As alleged in Sections III(C) and III(H), TIGTA examined the consent statements of four online tax-preparation providers and found them noncompliant, and the IRS agreed.

363. Defendant's violations of 720 ILCS 5/14-2(a)(3) invaded Plaintiffs and Class Members' protected privacy interest in their intercepted communications and TRI and deprived them of control over that information. That invasion is itself the injury and was directly and proximately caused by Defendant's conduct.

364. Each tax preparation session conducted on a platform on which Defendant's software was deployed was a distinct act of interception, recording, and transcription, and each subsequent use or disclosure of the TRI so obtained was a further separate violation.

365. Pursuant to 720 ILCS 5/14-2, Plaintiffs and Class Members are entitled to nominal damages.

366. Pursuant to 720 ILCS 5/14-6, Plaintiffs and Class Members are entitled to punitive damages for Defendant's knowing and intentional violations, and to reasonable attorneys' fees and costs pursuant to 720 ILCS 5/14-6.

367. Defendant's violations are ongoing. Plaintiffs and Class Members seek an injunction requiring Defendant to cease intercepting, recording, and transcribing their private electronic communications and to destroy TRI collected without lawful consent.

**Thirteenth Cause of Action**
**Maryland Wiretapping and Electronic Surveillance Act**
**(Md. Cts. & Jud. Proc. §§ 10-402, 10-410)**
**On Behalf of Plaintiffs and the Maryland Class**

368.   Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

369.   Plaintiff Michelle Dorry, individually and on behalf of the Maryland Class, brings this claim for violations of the Maryland Wiretapping and Electronic Surveillance Act, Md. Cts. & Jud. Proc. § 10-402. Defendant willfully intercepted, used, and disclosed Plaintiffs and Class Members' electronic communications containing TRI without the consent of all parties.

370.   Section 10-410 provides a private right of action to any person whose electronic communications are intercepted, used, or disclosed in violation of § 10-402.

371.   Plaintiffs and Class Members' transmission of TRI to their tax return preparers and the IRS were electronic communications within the meaning of § 10-401(b). As alleged in Section III(E), Defendant captured them in real time as they were transmitted.

372.   The TRI intercepted includes information concerning the existence, substance, purport, or meaning of the communication, including the pages loaded and tax forms used, the identity of the taxpayer, and details of their interactions with their tax return preparer.

373.   Defendant's interception was willful within the meaning of § 10-402. As alleged in Section III(G), Defendant designed, deployed, and sold their software to capture user interactions in real time.

374.   Defendant willfully used and disclosed the intercepted communications, in violation of § 10-402(a)(2). As alleged in Sections III(F) and

62

III(G), Defendant used Plaintiffs and Class Members' TRI to refine their analytics products and to provide advertising and behavioral data to their customers.

375. Defendant was not a party to Plaintiffs and Class Members' communications, which were between Plaintiffs and Class Members and the tax preparation companies. As alleged in Section III(E), Defendant inserted their software into the channel to intercept the data.

376. Maryland requires the consent of all parties. As alleged in Section III(H), Plaintiffs and Class Members did not know of, and did not consent to, Defendant's interception, and no compliant consent was obtained.

377. Defendant's violations of the Maryland Wiretapping and Electronic Surveillance Act invaded Plaintiffs and Class Members' protected privacy interest in their intercepted communications and TRI and deprived them of control over that information. That invasion is itself the injury and was directly and proximately caused by Defendant's conduct.

378. Each tax preparation session conducted on a platform on which Defendant's software was deployed was a distinct act of interception, and each subsequent use or disclosure of the TRI so obtained was a further separate violation.

379. Pursuant to Md. Cts. & Jud. Proc. § 10-410, each Plaintiff and Class Member is entitled to the greater of actual damages or liquidated damages of $100 per day of violation or $1,000.

380. Because Defendant's violations were willful, Plaintiffs and Class Members are also entitled to punitive damages and reasonable attorneys' fees and costs pursuant to § 10-410.

381. Defendant's violations are ongoing. Plaintiffs and Class Members seek an injunction requiring Defendant to cease intercepting their electronic communications and to destroy TRI collected without lawful consent.

**Fourteenth Cause of Action**
**Massachusetts Wiretap Act**
**(Mass. Gen. Laws ch. 272, § 99)**
**On Behalf of Plaintiffs and the Massachusetts Class**

382. Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

383. Plaintiff Melissa Peace, individually and on behalf of the Massachusetts Class, bring this claim for violations of the Massachusetts Wiretap Act, Mass. Gen. Laws ch. 272, § 99. Section 99(Q) provides a civil cause of action to any aggrieved person whose wire communications were intercepted, used, or disclosed in violation of the Act.

384. When Plaintiffs and Class Members entered their TRI into the tax preparation platforms, they transmitted private communications to the tax preparation companies and the IRS through facilities for the transmission of communications by wire and cable. Those transmissions were wire communications within the meaning of § 99(B)(1).

385. Plaintiffs and Class Members did not merely browse information published on the platforms. The TRI transmitted includes information concerning the existence, substance, purport, or meaning of the communication, including the pages loaded and tax forms used, the identity of the taxpayer, and details of their interactions with their tax return preparer.

386. Defendant secretly recorded the contents of those communications. As alleged in Sections III(E) and III(G), Defendant embedded software code in the platforms that captured Plaintiffs and Class Members' TRI contemporaneously with its entry and transmitted it to Defendant's servers. That software code was an intercepting device within the meaning of § 99(B)(3).

64

387. Defendant was not a party to those communications, which were between Plaintiffs and Class Members and the tax preparation companies, and no party gave Defendant prior authority to record them. As alleged in Section III(E), Defendant inserted their code into the communication channel to capture the data.

388. Defendant's recording was secret. As alleged in Section III(E), Plaintiffs and Class Members entered their TRI through private, password-protected accounts and did not expect a third-party vendor to receive it; as alleged in Sections III(C) and III(H), no consent statement identified Defendant as a recipient or described any commercial purpose, and TIGTA found the consent statements actually used noncompliant.

389. Defendant acted intentionally and knowingly. As alleged in Section III(G), Defendant designed, deployed, and sold their software to capture user interactions in real time and knew it was deployed on tax preparation platforms. Defendant's knowing and intentional interception, use, and disclosure of Plaintiffs and Class Members' TRI support an award of punitive damages under § 99(Q).

390. Defendant also used and disclosed the contents of the intercepted communications. As alleged in Sections III(F) and III(G), Defendant used Plaintiffs and Class Members' TRI to build behavioral profiles, train commercial models, and construct advertising audiences. Each such use and each such disclosure independently violated § 99.

391. Plaintiffs and Class Members are aggrieved persons within the meaning of § 99(Q). Defendant's interception, use, and disclosure invaded their protected privacy interest in their communications and TRI and deprived them of control over that information. That invasion is itself the injury and was directly and proximately caused by Defendant's conduct.

392. Each tax preparation session conducted on a platform on which Defendant's software was deployed was a distinct act of interception, and each subsequent use or disclosure of the TRI so obtained was a further separate violation.

393. Pursuant to § 99(Q), each Plaintiff and Class Member is entitled to the greater of actual damages or liquidated damages computed at $100 per day of violation or $1,000, together with punitive damages and reasonable attorneys' fees and costs.

394. Defendant's violations are ongoing. Plaintiffs and Class Members seek an injunction requiring Defendant to cease intercepting their communications and to destroy TRI collected without lawful consent.

**Fifteenth Cause of Action**
**Reserved**

**Sixteenth Cause of Action**
**Michigan Wiretap Statute**
**(Mich. Comp. Law § 750.539c)**
**On Behalf of Plaintiffs and the Michigan Class**

395. Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

396. Plaintiff Dorie Leland, individually and on behalf of the Michigan Class, brings this claim for violations of the Michigan Wiretap Statute, Mich. Comp. Laws §§ 750.539c and 750.539d.

397. Defendant willfully used a device to overhear, record, or transmit Plaintiffs and Class Members' private discourse without the consent of all parties, and used and disclosed the intercepted communications.

66

398. The private right of action and civil remedies for violations of § 750.539 are provided by Mich. Comp. Laws § 750.539h, which entitles an aggrieved person to actual damages, punitive damages, and injunctive relief.

399. Plaintiffs and Class Members' transfer of TRI to their tax preparers and the IRS were private communications and discourse within the meaning of § 750.539. They transmitted that information to their tax preparers and the IRS with no reason to believe an undisclosed third party had simultaneous access, and no consent disclosure identified Defendant. As alleged in Section III(B), federal law independently protects TRI from unauthorized disclosure.

400. Those communications conveyed contents —including information concerning the existence, substance, purport, or meaning of the communication, including the pages loaded and tax forms used, the identity of the taxpayer, and details of their interactions with their tax return preparer.

401. Defendant intercepted those communications while they were in transit. As alleged in Section III(E), Defendant's software captured the TRI and transmitted it to Defendant's servers in real time.

402. Defendant's interception was willful within the meaning of § 750.539. As alleged in Section III(G), Defendant designed, deployed, and operated their software to capture user inputs on the platforms where Plaintiffs and Class Members entered their TRI.

403. Defendant used and disclosed the intercepted TRI for commercial purposes unrelated to tax preparation — including behavioral profiling, model training, advertising-audience construction — as alleged in Section III(F). Each such use and each such disclosure was a separate violation of § 750.539.

404. Defendant was not a party to Plaintiffs and Class Members' communications, which were between Plaintiffs and Class Members and their tax

preparation companies and the IRS. As alleged in Section III(E), Defendant inserted their software into the channel to intercept the data.

405. Plaintiffs and Class Members did not consent to Defendant's interception, use, or disclosure. As alleged in Section III(H), no consent document identifying Defendant by name was presented to or executed by Plaintiffs and Class Members.

406. Defendant's violations of § 750.539 invaded Plaintiffs and Class Members' protected privacy interest in their intercepted communications and TRI and deprived them of control over that information. That invasion is itself the injury and was directly and proximately caused by Defendant's conduct.

407. Each tax preparation session conducted on a platform on which Defendant's software was deployed was a distinct act of interception, and each subsequent use or disclosure of the TRI so obtained was a further separate violation.

408. Pursuant to Mich. Comp. Laws § 750.539i, proof of installation of Defendant's software on the tax preparation computer systems is prima facie evidence of a violation of § 750.539d.

409. Pursuant to Mich. Comp. Laws § 750.539h, Plaintiffs and Class Members are entitled to their actual and nominal damages, including the economic value of the TRI Defendant captured and monetized, as alleged in Section III(F).

410. Because Defendant's violations were willful, Plaintiffs and Class Members are also entitled to exemplary damages pursuant to § 750.539h.

411. Defendant's violations are ongoing. Plaintiffs and Class Members seek an injunction requiring Defendant to cease intercepting their communications and to destroy TRI collected without lawful consent.

**Seventeenth Cause of Action**
**Minnesota Wiretap Statute**
**(Minn. Stat. Ann. § 626A.02)**
**On Behalf of Plaintiffs and the Minnesota Class**

412.   Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

413.   Plaintiff Monica Hatch, individually and on behalf of the Minnesota Class, brings this claim for violations of the Minnesota Wiretap Statute, Minn. Stat. § 626A.02. Defendant intentionally intercepted the electronic communications of Plaintiffs and Minnesota Class Members, without consent and without any applicable exception.

414.   Defendant intercepted those communications while they were in transit. As alleged in Section III(E), Defendant's software streamed the data to Defendant's servers at the moment of entry.

415.   Plaintiffs and Minnesota Class Members' transmission of TRI to their tax return preparers and the IRS were electronic communications within the meaning of § 626A.02.

416.   Those communications conveyed contents — including information concerning the existence, substance, purport, or meaning of the communication, including the pages loaded and tax forms used, the identity of the taxpayer, and details of their interactions with their tax return preparer, as alleged in Section III(E).

417.   Defendant acted intentionally within the meaning of § 626A.02. As alleged in Section III(G), Defendant designed their software to capture user interactions on the platforms and to transmit that data to Defendant's servers in real time.

418. Plaintiffs and Minnesota Class Members did not consent to Defendant's interception. As alleged in Section III(H), no consent document

identifying Defendant by name was presented to or executed by any member of the Minnesota Class.

419. Defendant's violations of § 626A.02 invaded Plaintiffs and Minnesota Class Members' protected privacy interest in their intercepted communications and TRI and deprived them of control over that information. That invasion is itself the injury and was directly and proximately caused by Defendant's conduct.

420. Each tax preparation session conducted on a platform on which Defendant's software was deployed was a distinct act of interception, and each subsequent use or disclosure of the TRI so obtained was a further separate violation.

421. Pursuant to Minn. Stat. § 626A.13, Plaintiffs and Minnesota Class Members are entitled to an injunction; the greater of a) the sum of three times the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, or b) statutory damages with a minimum of $100 per day or $10,000 per violation; and punitive damages.

422. Actual damages include the economic value of the TRI Defendant captured and monetized, as alleged in Section III(F).

423. Plaintiffs and Minnesota Class Members are also entitled to reasonable attorneys' fees and litigation costs reasonably incurred pursuant to § 626A.13.

424. Defendant's violations are ongoing. Plaintiffs and Minnesota Class Members seek an injunction requiring Defendant to cease intercepting their communications and to destroy TRI collected without lawful consent.

70

**Eighteenth Cause of Action**
**New Hampshire Wiretap Statute**
**(N.H. Rev. Stat. § 570-A:2)**
**On Behalf of Plaintiffs and the New Hampshire Class**

425.   Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

426.   Plaintiffs Steven Neff and Cheryl Gebo, individually and on behalf of the New Hampshire Class, bring this claim for violations of the New Hampshire Wiretap Statute, N.H. Rev. Stat. § 570-A:2. Defendant intentionally intercepted the contents of Plaintiffs and Class Members' electronic communications without the consent of all parties.

427.   Defendant intercepted those communications while they were in transit. As alleged in Section III(E), Defendant's interception was contemporaneous with transmission.

428.   The TRI Defendant intercepted constitutes contents within the meaning of RSA 570-A, which defines contents to include information concerning the substance, purport, or meaning of the communication. As alleged in Section III(E), Defendant captured information concerning the existence, substance, purport, or meaning of the communication, including the pages loaded and tax forms used, the identity of the taxpayer, and details of their interactions with their tax return preparer.

429.   Defendant's interception was intentional. As alleged in Section III(G), Defendant deliberately designed, deployed, and maintained their software to capture user interactions on the tax preparation platforms, knowing it was capturing identifiable TRI.

430.   Plaintiffs and Class Members did not consent to Defendant's interception. As alleged in Section III(H), Defendant were not identified in any

71

consent disclosure, and no consent complying with 26 C.F.R. § 301.7216-3 authorized disclosure of TRI to Defendant.

431. The consent failure is common to the class. As alleged in Section III(C), TIGTA found that the consent statements used by the tax preparation companies did not identify intended recipients or describe the purposes of disclosure, a failure that applied uniformly to every member of the New Hampshire Class.

432. Defendant's violations of § 570-A:2 invaded Plaintiffs and Class Members' protected privacy interest in their intercepted communications and TRI and deprived them of control over that information. That invasion is itself the injury and was directly and proximately caused by Defendant's conduct.

433. Each tax preparation session conducted on a platform on which Defendant's software was deployed was a distinct act of interception.

434. N.H. Rev. Stat. § 570-A:11 provides a civil remedy of the greater of actual damages or $100 per day of violation or $1,000 per violation, punitive damages, and reasonable attorney's fees and costs. Plaintiffs and Class Members are entitled to statutory damages for each act of interception.

435. Plaintiffs and Class Members are also entitled to actual damages, including the economic value of the TRI Defendant captured and monetized, as alleged in Section III(F).

436. Because Defendant's violations were willful and knowing, Plaintiffs and Class Members are entitled to attorney's fees and costs under § 570-A:11.

437. Defendant's violations are ongoing. Plaintiffs and Class Members seek an injunction requiring Defendant to cease intercepting TRI without compliant consent and to destroy TRI captured without lawful consent.

**Nineteenth Cause of Action**
**New York Deceptive Practices Act**
**(N.Y. Gen. Bus. Law, § 349 ("GBL"))**
**On Behalf of Plaintiffs and the New York Class**

438.   Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

439.   Plaintiffs Sandeep Trisal and Gregory Bassell, individually and on behalf of the New York Class, bring this claim for violations of the New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349. Defendant engaged in consumer-oriented conduct that was materially deceptive and caused injury to the New York Class.

440.   Defendant's conduct was consumer-oriented. As alleged in Sections III(D), III(E), and III(G), Defendant deployed standardized software that automatically captured the TRI of every New York consumer who conducted a tax preparation session using a tax preparer where Defendant's software was installed.

441.   As alleged in Section III(C), New York requires tax preparers to provide consumers the New York Consumer Bill of Rights Regarding Tax Preparers, which states that it is illegal for a tax preparer to reveal personal information to anyone other than the consumer or the consumer's designee, confirming the reasonable expectation that TRI would not be captured by an undisclosed third party.

442.   Defendant's omission of information that it was intercepting this TRI was materially deceptive. As alleged in Sections III(E), III(G), and III(H), Defendant possessed and withheld material information — that it was capturing TRI, that capture began before any consent mechanism was presented, that no consent document identified Defendant as a recipient, and that it was using the

73

information to build advertising audiences, train models, and deliver in-session upsell offers.

443. The New York Class suffered actual injury. As alleged in Sections III(E), III(F), and III(H), members of the New York Class paid for tax-preparation services marketed and understood as confidential, but received a materially different service in which Defendant simultaneously intercepted and commercially exploited their TRI. That price/value mismatch and the unauthorized exposure of protected tax information caused actual injury under N.Y. Gen. Bus. Law § 349.

444. Each tax preparation session conducted on a platform on which Defendant's software was deployed was a distinct deceptive act.

445. Defendant's conduct was knowing and willful, as alleged in Sections III(G) and III(H). The New York Class is entitled to the statutory minimum of $50 per violation, statutory damages up to $1,000 per violation for Defendant's knowing and willful conduct, and actual damages, pursuant to N.Y. Gen. Bus. Law § 349(h).

446. Defendant's conduct is ongoing. The New York Class is entitled to injunctive relief under N.Y. Gen. Bus. Law § 349(h) prohibiting Defendant from deploying session-recording or tracking software on any tax preparation platform without first obtaining consent that identifies Defendant by name, describes each commercial purpose, and satisfies 26 C.F.R. § 301.7216-3.

447. The New York Class is further entitled to attorneys' fees and costs under N.Y. Gen. Bus. Law § 349(h).

**Twentieth Cause of Action**
**Pennsylvania Wiretap Statute**
**(18 Pa. Cons. Stat. § 5703)**
**On Behalf of Plaintiffs and the Pennsylvania Class**

448. Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

449. Plaintiff Sara Bullard, individually and on behalf of the Pennsylvania Class, brings this claim for violations of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5703. Defendant intentionally intercepted, used, and disclosed Plaintiffs and Class Members' electronic communications containing TRI without the consent of all parties.

450. Section 5703 prohibits any person from intentionally intercepting, endeavoring to intercept, procuring another to intercept, using, endeavoring to use, disclosing, or disclosing endeavoring to disclose the contents of any electronic communication, or evidence derived therefrom. 18 Pa. Cons. Stat. § 5703(1)–(3).

451. As alleged in Section III(E), Defendant intercepted Plaintiffs and Class Members' electronic communications — including their TRI— in real time and transmitted them to Defendant's servers.

452. The communications Defendant intercepted constitute contents within the meaning of 18 Pa. Cons. Stat. § 5702 — the substantive information Plaintiffs and Class Members intended to communicate to their tax return preparers and the IRS, including information concerning the existence, substance, purport, or meaning of the communication, including the pages loaded and tax forms used, the identity of the taxpayer, and details of their interactions with their tax return preparer, as alleged in Section III(E).

453. Defendant's interception was intentional. As alleged in Sections III(E) and III(G), Defendant deliberately designed, marketed, and deployed their software on the tax preparation systems, knowing taxpayers used them to send TRI to their tax return preparers and the IRS, and configured it to capture TRI continuously and in real time.

454. Defendant endeavored to and actually did use and disclose the intercepted TRI for their own commercial benefit, as alleged in Section III(F).

455. No member of the Pennsylvania Class consented to Defendant's interception. As alleged in Sections III(C) and III(H), no consent disclosure identified Defendant by name or described their commercial purposes, and TIGTA found the consent statements noncompliant with 26 C.F.R. § 301.7216-3.

456. Pennsylvania Plaintiffs were not informed that Defendant's software was operating on the platforms they used and had no reason to know that a third-party vendor was intercepting their TRI in real time.

457. Defendant's violations injured Plaintiffs and Class Members principally through the unauthorized interception, use, and disclosure of their TRI and the loss of control over it; to the extent Defendant extracted economic value from that information, that extracted value is an additional measure of harm.

458. Each tax preparation session conducted on a system on which Defendant's software was deployed was a distinct interception event under 18 Pa. Cons. Stat. § 5703.

459. Pursuant to 18 Pa. Cons. Stat. § 5725, Plaintiffs and Class Members are entitled to the greater of $100 per day of violation or $1,000 per violation, plus costs and reasonable attorneys' fees.

460. Because Defendant's conduct was intentional and undertaken for commercial gain, Plaintiffs and Class Members are also entitled to punitive damages under 18 Pa. Cons. Stat. § 5725.

461. Defendant's conduct is ongoing. Plaintiffs and Class Members seek an injunction requiring Defendant to cease intercepting TRI from Pennsylvania users without all-party consent complying with the Act and 26 C.F.R. § 301.7216-3, to delete TRI previously intercepted without consent, and to implement technical controls preventing future unauthorized interception.

## Twenty-First Cause of Action
### Washington Privacy Act
### (Wash. Rev. Code § 9.73 et seq.)
### On Behalf of Plaintiffs and the Washington Class

462. Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

463. Plaintiff William Kopatich, individually and on behalf of the Washington Class, bring this claim for violations of the Washington Privacy Act, Wash. Rev. Code § 9.73 et seq. Defendant intercepted and recorded Plaintiffs and Class Members' private communications containing TRI, without the consent of all parties, in violation of RCW 9.73.030(1)(a).

464. RCW 9.73.060 provides a civil cause of action to any person injured by a violation of RCW 9.73.030.

465. Plaintiffs and Class Members' entries of TRI were private communications within the meaning of RCW 9.73.030(1)(a). As alleged in Section III(E), Plaintiffs and Class Members conveyed their TRI, including information concerning the existence, substance, purport, or meaning of the communication, including the pages loaded and tax forms used, the identity of the taxpayer, and details of their interactions with their tax return preparer.

466. Plaintiffs and Class Members transmitted substantive information to the tax preparers and the IRS through private, password-protected accounts, under circumstances reasonably understood to be private.

467. These communications were transmitted by electronic means between Plaintiffs and Class Members, on the one hand, and their tax preparers and the IRS, on the other, and conveyed substantive TRI.

468. Defendant intercepted and recorded the contents of those private communications. As alleged in Sections III(E) and III(G), Defendant embedded

software code in the platforms that captured Plaintiffs and Class Members' TRI contemporaneously with its entry and transmitted it to Defendant's servers. That software code is a device, electronic or otherwise, designed to record and transmit the communication within the meaning of RCW 9.73.030(1)(a).

469. Defendant acted intentionally. As alleged in Sections III(E) and III(G), Defendant designed, marketed, and deployed their software to capture user inputs in real time and knew it was deployed on tax preparation platforms where users entered TRI to communicate that information to their tax preparer and the IRS.

470. Defendant was not a participant in those communications, which were between Plaintiffs and Class Members and the tax preparation companies, and Plaintiffs and Class Members did not consent to Defendant's interception or recording. As alleged in Sections III(C) and III(H), no consent disclosure identified Defendant as a recipient or described any commercial purpose, and TIGTA found the consent statements actually used noncompliant. Washington requires the consent of all participants.

471. Defendant is not within any class of persons or activities excepted from the Washington Privacy Act under RCW 9.73.070.

472. Defendant used and disclosed the contents of the intercepted communications for their own commercial purposes, as alleged in Section III(F).

473. Defendant's violations injured Plaintiffs and Class Members principally through the unauthorized interception, recording, use, and disclosure of their TRI and the loss of control over it; to the extent Defendant extracted economic value from that information, that extracted value is an additional measure of harm.

474. Each tax preparation session conducted on a system on which Defendant's software was deployed was a distinct violation of RCW 9.73.030.

475. Pursuant to RCW 9.73.060, each Plaintiff and Class Member is entitled to actual damages, including damages for mental pain and suffering, or liquidated

damages computed at $100 per day of violation up to $1,000, whichever is greater, together with reasonable attorneys' fees and other costs of litigation.

476. Defendant's conduct is ongoing. Plaintiffs and Class Members seek an injunction requiring Defendant to cease intercepting and recording TRI from Washington users without the consent of all parties and to destroy TRI collected without lawful consent.

**Twenty-Second Cause of Action**
**Negligence/Negligence Per Se**
**On Behalf of Plaintiffs, the National Class, and each State Class**

477. Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

478. All Plaintiffs bring this claim under California law on behalf of themselves and the nationwide class. Alternatively, each Plaintiff brings this claim on behalf of their respective state Class under their respective state's law.

479. Defendant owed a duty to Plaintiffs and Class members to exercise reasonable care in protecting their confidential tax and financial information from unauthorized disclosure and use.

480. Defendant failed to comply with reasonable standards to prevent unauthorized disclosure of confidential tax and financial information to Defendant. This is particularly so given that Defendant knew the nature of their tax preparation customers' business, that data including TRI was being transmitted to it via its tracking tools, that TRI was being used for purposes other than the preparation of tax returns, and yet took no action.

481. The lack of reasonable care in the handling of the confidential information at issue here can foreseeably harm the individuals providing the information.

482. The TRI at issue here was private, and Plaintiffs and Class members trusted appropriate measures would be used to prevent disclosure of their confidential information.

483. Defendant breached its duties to Plaintiffs and Class members. Defendant knew or should have known that it was collecting, disclosing, and using confidential TRI. Defendant knew or should have known that its business practices did not safeguard TRI or use it only for the purpose of preparing tax returns and communicating that TRI to the IRS.

484. The doctrine of negligence per se also applies here. At all times, Defendant had an obligation to comply with all state and federal laws restricting the disclosure of confidential TRI, including but not limited to 26 U.S.C. §§ 6713 and 7216. Defendant also had an obligation to comply with state and federal wiretap laws and tax privacy laws. Defendant's actions as described herein violated these laws.

485. Plaintiffs and Class members are within the class of persons protected by state and federal laws governing the disclosure of tax filing information, and state and federal wiretapping laws. Plaintiffs' and Class members' injuries are the type of harm that these same laws are intended to prevent.

486. As a result of Defendant's negligence, Plaintiffs and Class members suffered the following injuries, which were foreseeable to Defendant: (1) the loss of privacy of Plaintiff's protected financial information; (2) time and resources expended to investigate and respond to Defendant's violations; (3) diminution in value of their protected financial information; and (4) loss of the benefit of their bargain with their tax preparer. Plaintiffs' tax filing and financial information is a valuable commodity, as it is a key demographic marker for marketing purposes.

487. Defendant encouraged the transmission of TRI by providing tax-filing websites with technology that Defendant knew would result in the transmission and

use of TRI, and took no action against websites when Defendant began obtaining and using that information.

488.   Defendant's violations of the aforementioned statutes are negligence per se.

489.   Plaintiffs and class members seek all available relief for Defendant's negligence, including damages, restitution, punitive damages, nominal damages, and any other relief the Court deems just.

**Twenty-Third Cause of Action**
**Unjust Enrichment**
**On Behalf of Plaintiffs, the National Class, and each State Class**

490.   Plaintiffs reallege and incorporate by reference the allegations set forth in Sections I through V above as though fully set forth herein, but not the allegations of any other Cause of Action.

491.   To the extent required by applicable law, this count is pleaded in the alternative to Plaintiffs' legal claims.

492.   Defendant received a benefit directly traceable to Plaintiffs and Class Members when Defendant obtained valuable TRI and TRI-derived analytics from Plaintiffs and used that information to sell, improve, and market Defendant's services, as alleged in Section III(F).

493.   Defendant has been unjustly enriched at the expense of the Plaintiffs and Class members.

494.   Defendant has unjustly retained the benefits of its unlawful and wrongful conduct.

495.   It would be inequitable and unjust for Defendant to retain any of the unlawful proceeds resulting from its unlawful and wrongful conduct.

Plaintiffs and class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct. Plaintiffs and class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of their unjust conduct.

### VII.   PRAYER FOR RELIEF

Plaintiffs, individually, and on behalf of the other members of the Class, pray for the following relief:

A. For an order certifying the class and Classes and naming Plaintiffs as the representative of the class and Classes, and naming Plaintiffs' attorneys as Class Counsel to represent the class and Class members;

B. For an order declaring that Defendant's conduct violates the statutes referenced herein;

C. For an order finding in favor of Plaintiffs and members of the class and each Class on all counts asserted herein;

D. For an order granting declaratory and injunctive relief, and restitution only to the extent permitted by the particular causes of action and applicable equitable principles, including relief requiring Defendant to cease the interception, retention, use, and disclosure of Plaintiffs' and Class Members' TRI and to delete TRI and TRI-derived data obtained without lawful consent;

E. For statutory damages, actual damages, punitive damages, and other monetary relief to the extent authorized by the particular causes of action and the law governing them;

F. Pre-judgment and post-judgment interest as provided by law;

G. Reasonable attorney's fees and costs of the action; and

H. Any other and further relief as the Court may deem necessary and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs request a trial by jury on all issues so triable.

Dated: August 14, 2026                    By: */s/* Aaron M. Zigler

Aaron M. Zigler (Cal. Bar No. 327318)
Kevin M. McCormack (*pro hac vice* to be filed)
Nidya S. Gutierrez (Cal. Bar No. 330209)

ZIGLER LAW GROUP, LLC
308 S. Jefferson Street | Suite 333
Chicago, IL 60661
Tel: 312.535.5995
aaron@ziglerlawgroup.com
kevin@ziglerlawgroup.com
nidya@ziglerlawgroup.com

*Attorneys for Plaintiffs and the Proposed Class*